This appeal involves a residential property owner association and addresses whether amendments to protective covenants and corporate by-laws may impose assessments on its members and expand the authority *Page 1231 
of the corporation.[1] Appellants Alex Perry, Bill Carlock, John Nelson, (hereinafter appellants), along with other complainants not appealing, filed suit for an injunction in DeSoto County Chancery Court against Bridgetown Community Association, Inc., its officers and directors for 1980, (hereinafter BCA), a homeowner's association. The suit alleged that the officers and directors were operating under bylaws in violation of the charter of incorporation.
It was agreed by all parties that the DeSoto County Chancery Court consider all facts, stipulations, pleadings and briefs of counsel on the threshold issue of liability. The lower court dismissed the case with prejudice and dissolved the temporary injunction. Appellants appeal and assign the following as error.
(1) The court erred by disregarding the statute which requires that non-profit corporations shall make expulsion the only remedy for non-payment of dues.
(2) The court erred in finding that the six pages of signatures appended to the "agreement to amend protective covenants" were properly acknowledged and recorded.
(3) The court erred in ruling that the complainants failed to meet the burden of proof regarding the issue of whether or not the voting rights of the developer were in conflict with the charter of incorporation.
(4) The court erred in failing to comply with the provisions of § 11-5-87 Miss. Code Ann., with regard to the specific questions contained in the stipulations.
 I.
On September 1, 1970, at 9:00 o'clock A.M., twenty-one (21) restrictive covenants for the subdivision LakeWood Estates Subdivision were filed for recording in the Chancery Clerk's Office in DeSoto County, Mississippi. These twenty-one (21) restrictive covenants were stipulated to by parties and included a provision under paragraph No. 21 which read as follows:
 These protective covenants may be amended by a written agreement duly executed by a party or parties owning 65% of the land and property subject to the restrictions hereto set out at the time said amendment, modification or revocation is sought. These covenants are to run with the land and shall be binding on all parties and persons claiming under them for a period of thirty (30) years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive ten (10) year periods unless an instrument signed by the owner or owners of the majority of the above described lots has been recorded in the public records agreeing to amend, modify or revoke said covenants in whole or in part.
All complainants/appellants to this suit took title to their respective lots subject to the protective covenants. On September 17, 1973, a non-profit corporate charter was issued to Lakewood Estates Association, by the Secretary of State of the State of Mississippi, and approved by the Attorney General of the State of Mississippi. On October 31, 1979, the corporate charter of Lakewood Estates Association was amended by the Secretary of State changing the name to Bridgetown Community Association, Inc. (hereinafter referred to as BCA).
The purpose of incorporation was stated to be:
 This corporation is created for the purpose of holding, owning, managing, improving and supervising common property of a residential property-owners association. Said corporation is to have the right and power to make improvements, supervise and maintain the common property as well as enforce rules and regulations set out in by-laws of this corporation. These said rights and powers shall be limited to those reasonably necessary to accomplish the stated purposes of the association being incorporated. This corporation . . . shall make expulsion the *Page 1232 
only remedy for non-payment of dues, shall vest in each member the right to one (1) vote in the election of all officers See Miss. Code Ann. § 79-11-1 (1972).
On July 2, 1975, the Agreement to Amend Protective Covenants which was signed by over sixty-five percent of the lot owners of Lakewood Estates was filed of record in Deed Book 118, Page 247. This Agreement was later referred to as the Declaration in the By-Laws adopted by the Corporation. The Declaration or "Agreement to Amend Protective Covenants" was signed by Complainants, Bill Carlock, Paul Fiebke, John Nelson, and Vick Ellis. Complainants, Alex Perry, Doug Shaw, and George Grisham purchased their lots from Sellers who had signed the Agreement to Amend Protective Covenants. All complainants admit in their pleading that they are members of the homeowner association.
It was stipulated orally that as of October 28, 1982 the Developer had sold all lots it owned in Bridgetown Subdivision.
The Protective Covenants as Amended gave authority to a Maintenance Association known as Bridgetown Community Association to collect dues for the maintenance of the common areas and gave the association authority to enforce collection of these dues or assessments both in law and in equity.
On December 2, 1979, the BCA adopted new bylaws effective January 1, 1980, containing extensive modifications and additions to the previous restrictive covenants, including, but not limited to: A provision requiring all record owners of property in the subdivision to be members; a provision granting to every member an easement to the common properties; a provision requiring maintenance assessments; a provision creating an architectural control committee, for the purpose of exterior maintenance of lots and houses, review of proposed construction on houses or lots, submission of plans for prevention of lake erosion, and approval of exterior color of houses; the addition of thirty-nine new use restrictions; and a provision providing for enforcement of the covenants in a proceeding either in law or equity.
In May, 1980 appellants filed suit against BCA, its officers and directors for a temporary injunction to freeze the assets of the corporation and enjoin the officers and directors from operating under the contested bylaws, contending (1) that the 1980 bylaws did not conform to the charter in permitting remedies other than expulsion for non-payment of dues, and (2) that the developer unfairly held two times the number of votes allowed all owners, and (3) that a 1975 version of bylaws were not properly acknowledged when recorded rendering the same void. A temporary injunction was ordered.
Appellees answered asserting that the maintenance association, its officers and directors, acted as trustees for the benefit of lot owners and since improvements by the association inured to the benefit of the lot owners, they were estopped from denying the existence of the association. Further, appellees assert that appellants had actual knowledge of the amendments to the protective covenants and were thereby estopped to argue lack of notice. Appellants, appellees and intervening petitioners (subdivision developer) submitted stipulations of threshold issues on liability along with all pleadings and exhibits. The chancellor dissolved the injunction and dismissed the suit, finding that there were no issues of liability to warrant a hearing on proof of damages.
 I.
Until recent times, the law relating to restrictive covenants upon real property has changed little and its interpretation has been strictly construed. Kemp v. Lake Serene Property OwnersAssociation, Inc., 256 So.2d 924 (Miss. 1971). The restrictive or protective covenant is generally created by a grant in a deed or by reference in a deed to a general plan of development. Restrictive covenants have been interpreted to be covenants running with the land and enforceable not only between the original parties, but also upon subsequent *Page 1233 
owners of the realty. William W. Bond, Jr. Asso., Inc. v. LakeO'The Hills Maintenance Association, 381 So.2d 1043 (Miss. 1980), Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418, 68 A.L.R.2d 1013 (1958). The usual purpose of these restrictions were to protect the owner's residence.
More recently, however, our society has become more complex, and land use has become more diversified. The more populous areas use land not only for single or multiple residences in subdivision developments, but for new arrangements of homeowners associations and planned unit developments. The latter have given rise to a new body of law.
This Court is called upon to address the unique roles and functions in the special relationship of the homeowner, the association, and third parties that deal with the association.
The formation of a homeowners association may be accomplished in several ways, but the documentation involves four basic steps (1) preparing and recording the subdivision plat, (2) preparing and recording the declaration of covenants applicable to the land, (3) preparing the articles and by-laws of a homeowners association and its incorporation, and (4) sale of the lots by deed that confirms the rights and duties provided for in the first three steps. Rohan, 6 Home Owner Associations and Planned Unit Developments, § 4.01 (1985).
In this case, the above method was used, although the non-profit status was delayed until a substantial number of lots were sold. The subdivision plat and "Protective Covenants" were placed on record in DeSoto County for "all purchasers and future owners of each or any of said lots for a period of thirty years." This preceded the sale of any lot. The covenants described in much detail the type of residential construction permitted and reserved the right of the developer to promulgate and enforce safety and welfare regulations. The covenants also secured the use and enjoyment of the lakes and recreational property to property owners. The last covenant provided for "amendment, modification, or revocation" by sixty-five percent of the owners.
Enforcement of these covenants was provided in the following language. "It shall be lawful for any other person or persons owning any of said lots to prosecute any proceeding at law or in equity . . . and prevent . . . [violations] . . . or recover damages or dues for such violation."
This Court notes that one of the unique characteristics of a homeowners association is mandatory membership. Upon taking title to a lot the property owner automatically becomes a member of the association and is subject to the obligations of membership and enforcement of the covenants. W. Hyatt, Condominium and Homeowners Association Practice: Community Association Law 35 (1981).
Thus, it can be reasoned that the existence of the homeowners association begins when the documents creating the association are recorded. Hyatt, supra at 39 n. 12. The roles of developer and lot owners are specified in the creating documents, and those individuals in control become fiduciaries in the discharge of these responsibilities to carry out the purpose of the association. Hyatt, supra at 40.
A second unique characteristic of a homeowners association is the power of the association to control the use and enjoyment of property. The extent of the power is defined in the declaration, but usually encompasses use and size of buildings upon individual lots and regulation of the property commonly enjoyed by all lot owners. In the case sub judice these powers were granted to the association through the initial declaration of 1972, and the subsequent amendments of 1980.
 II.
The question raised by this appeal is to what extent the powers of an original declaration can be changed by subsequent by-laws, specifically: (A) the enlargement of property control, and (B) the assessment levied upon lot owners for maintenance of *Page 1234 
the common area, and (C) review of those powers.
 A.
In determining the extent to which individual property control may be enlarged, the Court looks to intent of the declaration and the notice to the lot owner.
It is apparent from the twenty-one recorded protective covenants that the grantor envisioned a general plan of development with restrictions on the type and use of the buildings to be constructed and common areas for use by the lot owners. The document specifically states that the covenants are to run with the land, bind all owners, and be subject to amendment. The covenants specifically provided for dues. The question here is whether the amended covenants incorporated into the corporate by-laws exceed those of the original document. The original recorded declaration gave constructive notice to property owners. The signature of the appellants, or their predecessors in title, to the amendment was actual notice of the restrictions and liability for assessments. Therefore, this court concludes the intent was clear and unambiguous in the covenants. The appellants accepted their deeds with notice, are subject thereto, and are bound thereby. Bond v. Lake O'The Hills,381 So.2d 1043 (Miss. 1980), Alsdorf v. Broward County373 So.2d 695 (Fla.App. 1979). The recordation of their deeds acknowledge consent of the grantees to be bound by these covenants.
 B.
Concerning the question of assessments, appellants contend that maintenance assessments were not contemplated by the original covenant nor permitted by the non-profit corporation statute which provides:
 [S]uch corporations . . . shall make expulsion the only remedy for non-payment of dues, . . . Miss. Code Ann. § 79-11-1(2)(g) (1972).
It is noted that the original covenant provides for dues, but the corporation by-laws interpret the terms — dues and assessments — to be synonymous. A landowner who wilfully purchases property subject to control of the association and derives benefits from membership in the association implies his consent to be charged assessments and dues common to all other members.
The requirement of assessment for reasonable maintenance of common property is clearly within the contemplation of the covenant in the case sub judice. Thus this Court holds that there is an implied covenant by necessity. Arthur v. Lake TansiVillage, Inc., 590 S.W.2d 923 (Tenn. 1979).
Therefore, this Court holds that in a community association, the members enjoy the benefits of the development; the landowners thereby imply consent to the assessment for reasonable maintenance common to all other members. Arthur v. Lake TansiVillage, Inc., supra.
Further, the argument concerning the non-profit corporation statute is misplaced. Notwithstanding the fact that the statute makes expulsion the only remedy for non-payment of dues, a party may by contract obligate himself or herself to additional responsibilities. Such is the case here; the appellants through their contracts have consented to other sanctions. This Court finds no merit to this assignment of error.
 C.
However, the association is not beyond review in administration of these powers. The declaration gives rise to review in law or in equity by any lot owner. Review by the court must be guided by the intent stated in the declaration of purpose and judged by a test of reasonableness. Hidden Harbour Estates, Inc. v. Norman,309 So.2d 180 (Fla.App. 1975). Applying a reasonableness standard to a regulation, this Court will consider not only the rights of the individual owner, but also the rights of the other association members who expect maintenance in keeping with the general plan of development for the subdivision. *Page 1235 
 III.
Addressing the specific issues assigned as error on this appeal, this Court finds:
(1) The lower court did not err in interpreting the statute that requires non-profit corporations to make expulsion the only remedy for non-payment of dues.
(2) This Court finds that all parties to this suit signed the "agreement to amend protective covenants" indicating actual knowledge of all covenants listed therein. Any lot owner purchasing from sellers who signed the agreement are subject to those covenants and are bound thereby.
(3) The issue of whether or not the voting rights of the developer were in conflict with the charter of incorporation is rendered moot by the stipulation that as of October 28, 1982, the Developer had sold all lots owned in Bridgetown Subdivision.
(4) The fourth issue assigned as error is without merit.
The chancellor in his final opinion found that the intent behind the home owner association was to benefit the lot owners and that that intent was carried out. Further, the trial court found no issue of liability upon which proof of damages should be heard and dismissed the complainant and dissolved the temporary injunction. This Court affirms his decision.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
[1] This opinion does not address community associations constituting condominium owners as those associations are covered by Miss. Code Ann. § 89-9-1 et seq (1972).