681 So.2d 546 (1996)
Curtis H. GRIFFIN and Theresa Griffin
v.
TALL TIMBERS DEVELOPMENT, INC. and White Cypress Lakes Property Owners Association.
No. 93-CA-00798-SCT.
Supreme Court of Mississippi.
September 19, 1996.
*547 Floyd G. Hewitt, Jr., Compton & Hewitt, Biloxi, for Appellants.
*548 Eric D. Wooten, Gulfport, for Appellees.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
SMITH, Justice, for the court:
This dispute arose over whether Talmar, Inc., the original owners of a large development of thirteen subdivisions, had the exclusive right to establish a homeowners association or whether Tall Timbers Development, Inc. and White Cypress Lakes Property Owners, the appellees, who later acquired the development, could establish such an association. The chancellor in Hancock County first granted a temporary injunction against the homeowners association in favor of ninety-five plaintiffs, of whom only Curtis and Theresa Griffin remain as parties. Later, he denied both appellants' and appellees' motions for summary judgment and then, upon trial, dismissed appellants' action and refused to issue an injunction against the developer's newly created homeowners association. Aggrieved, the appellants filed their appeal with this Court citing eight issues which are combined as follows:
I. WHETHER APPELLEES, BECAUSE OF ASSIGNMENT FROM THE ORIGINAL DEVELOPER, HAVE THE RIGHT TO FORMA PROPERTY OWNERS ASSOCIATION.
II. WHETHER DENIAL OF PLAINTIFFS' POST TRIAL MOTIONS AND AMENDMENT OF THE FINAL JUDGMENT WAS ERRONEOUS?
III. WHETHER THE AWARD OF ATTORNEYS FEES, COSTS AND EXPERT WITNESS FEES WAS PROPER?
IV. WHETHER THE CHANCELLOR'S MODIFICATIONS TO THE BY-LAWS WERE PROPER, FAIR AND REASONABLE?
After thorough consideration of these issues, we hold that the chancellor was correct in finding that the subsequent owners had the right to form a homeowners association because such right was a covenant that runs with the land. We also find that the chancellor's amendment of the final judgment and the covenants was proper.
However, the chancellor erred in allowing attorneys fees and the expert witness fees concerning the injunction, because the injunction was merely incidental to the main issue raised by the appellants.

STATEMENT OF FACTS
In the Spring of 1977, L & A Contractors began work on a recently acquired 3600 acre tract of land in Hancock County which surrounded the already existing White Cypress Creek Development. In 1980, a group of investors, organized as Talmar, Inc., purchased the entire project, and continued to develop the area. In 1985, the property and project were sold to the White Cypress Lakes Development Corporation, which subsequently went into bankruptcy. As a result of the bankruptcy proceedings, the development is now owned by Tall Timbers Development, Inc.
Prior to Tall Timbers acquisition of title to the lots, Talmar, Inc. subdivided a portion of the tract of land into the above described subdivisions which are commonly known and referred to as White Cypress Lakes. Talmar, Inc. also filed certain instruments containing restrictions, covenants and conditions applicable to each subdivision for recording in the Office of Chancery Clerk of Hancock County, Mississippi. Among the covenants, was Paragraph 12, stating:
Talmar, Inc. shall have the right in its sole discretion to formulate, organize, and establish the said White Cypress Lakes Property Owners' Association... . Property owners shall be bound by the existing By-Laws of White Cypress Lakes Property Owners' Association... .
The last paragraph, states: "All of these restrictions, covenants, and conditions are to run with the land... ." Paragraph 11 states: "[E]ach owner shall become a member of the White Cypress Lakes Property Owners Association owned and operated by Talmar, Inc., its successors or assigns... ." The same also provides that every lot owner "covenant[s] and agree[s] that said Talmar, Inc., its successors and assigns shall have a lien *549 ... to secure the payment of the aforementioned dues, fees, and charges... ." Finally, Paragraph 12 states that Talmar and "its successors and assigns" have the responsibility of "maintenance of lanes, parks, lakes, and common recreational areas... ."
This controversy stems from the efforts of Tall Timbers, the current owner of the development, to create the property owners "Association" and the subsequent efforts by the Association to promulgate and enforce a certain Declaration of By-Laws. Tall Timbers created the Homeowners Association on March 28, 1992, and thereafter, on June 1, 1992, the Association promulgated its bylaws. This document purports to promulgate certain rights and obligations for all "members" of the Association, which would effectively govern any lot owner in the White Cypress Lakes Development.
There are approximately six hundred individual lots in the thirteen subdivisions (Woodhaven; Bull Creek I & II, Mallard Point I-VI; Cypress Point I & II; Quail Ridge I & II) comprising White Cypress Lakes. The original covenants for each of these subdivisions are essentially identical. The original plaintiffs collectively owned sixty five of these lots. The Griffins are the only remaining plaintiffs, and they own nine of these lots. The Griffins contend that the right to create a mandatory property owners association was a right personal to Talmar, Inc. and not one that ran with the land; and that once Talmar, Inc. conveyed the property, the right to create a mandatory property owners association expired, leaving only the right of voluntary association.
The Griffins filed a three part complaint on August 4, 1992. Count I sought a declaratory judgment holding that the protective covenants did not extend that right of forming a homeowners association to Tall Timbers, and that therefore, the Association and its bylaws were null and void. Count II sought a temporary restraining order against the Association from taking any actions relative to Count I. Count III asked that the by-laws be construed and interpreted in certain respects in the event the court held that Tall Timbers could form an association.
The Chancellor entered a preliminary injunction prohibiting the formation of the property owners association. Tall Timbers and White Cypress answered and moved that the injunction be dissolved. Subsequently, both the Griffins and the Association filed motions for summary judgment. The Association, in its summary judgment motion, also demanded damages for the alleged improper issuance of a preliminary injunction. The trial court denied both the appellants' and appellees' motions for summary judgment and proceeded to a trial on the merits.
On February 25, 1993, the Chancellor rendered his opinion in favor of the Homeowners Association. The Chancellor dissolved the injunction, stating that the "Court is of the opinion that the exclusive reservation contained in Paragraph 12 of the Restrictive Covenants pertains to the owner. When Tall Timbers purchased White Cypress Lakes from its previous owner it also purchased any and all obligations, duties and rights, including the right to form a property owners association."
The Chancellor further assessed attorneys fees, expert witness fees and costs against the Griffins in the amount of $21,508.46. He also entered a declaratory judgment amending the property owners association by-laws, by decree that attorneys fees for collection of delinquent dues may be awarded at the rate of 25%, rather than 15% as stated in the covenants. The Griffins filed a motion for judgment notwithstanding the verdict, which was also denied.

DISCUSSION OF LAW

I
A homeowners association may be formed in several ways, but the documentation involves four basic steps (1) preparing and recording the subdivision plat, (2) preparing and recording the declaration of covenants applicable to the land, (3) preparing the articles and by-laws of a homeowners association and its incorporation, and (4) sale of the lots by deed that confirms the rights and duties provided for in the first three steps. Perry v. Bridgetown Community Ass'n, Inc., 486 So.2d 1230 (Miss. 1986). Perry differs from the case sub judice because Perry involved *550 the enforcement of covenants and to what extent the powers of an original declaration can be changed by subsequent, by-laws. Perry at 1233. The issue sub judice is one that questions whether a homeowners association can be formed at all if the first developer never created one. In other words, the issue is whether the capacity to form a homeowners association is a covenant which runs with the land or is personal to the original developer.
As a matter of law, covenants for payment of annual assessments for operation of property owners associations are covenants running with the land. William W. Bond, Jr. & Associates, Inc. v. Lake O' The Hills Maintenance Association, 381 So.2d 1043 (Miss. 1980). Covenants which run with the land may be enforced by subsequent assignees or successors in title to the original parties. White v. Mississippi Power & Light Co., 196 So.2d 343 (Miss. 1967).
Restrictive covenants have been interpreted to run with the land and [to be] enforceable not only between the original parties, but also subsequent owners of realty. (citations omitted)... . More recently, however, our society has become more complex, and land use has become more diversified. The more populous areas use land not only for single or multiple residences in subdivision developments, but for new arrangements of home owners association and planned unit developments.
Perry v. Bridgetown Community Ass'n, Inc., 486 So.2d 1230, 1232-33 (Miss. 1986). The law is clear that the right to form a homeowners association runs with the land, and thereby binds subsequent assigns and successors of the original developer. Therefore, if the law recognizes that payments for annual assessments to cover expenses of homeowners association are covenants that run with the land, then the underlying right of having the capacity to form a homeowners association is one that will also run with the land.
Moreover, the plain language of the covenants completely supports the right of successors and assigns of the original developer to form a homeowners association. Paragraph 24 states: "All of these restrictions, covenants, and conditions are to run with the land... ." Paragraph 11 states: "[E]ach owner shall become a member of the White Cypress Lakes Property Owners Association owned and operated by Talmar, Inc., its successors or assigns... ." The same also provides that every lot owner "covenant[s] and agree[s] that said Talmar, Inc., its successors and assigns shall have a lien ... to secure the payment of the aforementioned dues, fees, and charges... ." Finally, Paragraph 12 states that Talmar and "its successors and assigns" have the responsibility of "maintenance of lanes, parks, lakes, and common recreational areas... ."
Though the issue is framed differently here than in Perry, Perry is instructive. We noted:
[i]t is apparent from the twenty-one recorded protective covenants that the grantor envisioned a general plan of development... . The document specifically states that the covenants are to run with the land, bind all owners, and be subject to amendment. The covenants specifically provided for dues... . The original recorded declaration gave constructive notice to property owners... . The appellants accepted their deeds with notice, and are subject thereto, and are bound thereby.
Perry at 1234. Essentially, in determining how to interpret the covenants, "the Court look[ed] to the intent of the declaration and the notice to the lot owner." Id.
Likewise, as in Perry, the covenants here specifically state that they are to run with the land. Such covenants put lot owners on notice that they will have to become members of the property owners association, owned and operated by either Talmar, its successors or its assigns. The lot owners were put on notice that they will be subject to fees or dues assessed by the homeowners association. Nowhere in the covenants does it state that if Talmar fails to make a property owners association, future owners of the development will not be able to create one either. Because of the explicit language used in the covenants, this Court finds that White Cypress Lakes property owners had sufficient notice to anticipate that a property owners association could be formed and that *551 they would be bound by the by-laws and dues of that association.
Again, looking to the intent of the covenants, it appears that the developer intended that a property owners association would be formed, and that its purpose would be to maintain the common recreational areas at White Cypress Lakes Development. The Griffins, as well as others who purchased lots, certainly cannot argue that they believed that they would have use of common recreational areas, such as the clubhouse, tennis courts, boat docks, pools, lakes, picnic areas, etc., and the costs for upkeep of those areas would come at no charge. The covenants clearly specify that lot owners will be responsible for maintenance costs via a property owners association.
In construing covenants imposing restrictions and burdens on use of land, the language used will be read in its ordinary sense, and the restriction and burden will be construed in light of the circumstances surrounding its formulation, with the idea of carrying out its object, purpose and intent, and the restrictions and burdens should be fairly and reasonably interpreted according to their apparent purpose. Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418 (1958). In Mendrop, this Court held that the covenants expressly stated that "Harrell and his successors in title agree[d] to bear the expenses for paving to be done in the future. In two places the deed states that this covenant is to `run with the land.'" Id. at 691, 103 So.2d 418. Thus, we held:
[a] covenant that is incident to the property conveyed and affects its value runs with the land and binds a subsequent purchaser... . [Thus, a] covenant running with the land can be enforced by the owner of some part of the dominant land for the benefit of which the covenant was made, namely, the appellants, owners of other parts of the subdivision. (citation omitted). Manifestly, it would be useless and ineffectual to create a covenant running with the land unless it also imposed on the property a lien for its enforcement. Nor is it necessary that the deed containing a covenant of this type expressly state that it shall constitute a lien.
Id. at 691-92, 103 So.2d 418. As applied to this case, a covenant providing for a homeowners association is a covenant that is incident to the property and affects its value positively, thus, it will be construed as one which runs with the land. Moreover, the covenants for White Cypress Lakes Development specifically state that "all ... covenants are to run with the land" and that subsequent owners will be bound by their terms, by being a "... member of the White Cypress Lakes Property Owners Association owned and operated by Talmar, Inc., its successors or assigns... ." Every lot owner knew that he/she was "covenant[ing] and agree[ing] that said Talmar, Inc., its successors and assigns [would] have a lien ... to secure the payment of the aforementioned dues, fees, and charges" in order "to maint[ain] lanes, parks, lakes, and common recreational areas." As in Mendrop, which also employed the "intention of the parties test," we hold that the intent of the White Cypress Lakes Development covenants was clear and unambiguous, and its intent was to have a homeowners association to which every lot owner would be subject, regardless of whether Talmar, Inc. owned the development, or its assigns and successors owned it. When a contract is clear and unambiguous on its face, its construction is a matter of law, and not fact, and must be construed and enforced as written. Pfisterer v. Noble, 320 So.2d 383, 384 (Miss. 1975). Because this issue was one of law, the lower court was correct in its interpretation of the covenants and in finding that the right to form a homeowners association ran with the land. There is no merit to this issue.

II
The Griffins next contend that the lower court erred by denying their motion for judgment notwithstanding the verdict or to amend the final judgment. After the trial on the merits, the court issued its memorandum opinion on February 25, 1993, and a final judgment on that opinion was issued on March 9, 1993. On March 10, 1993, the Griffins filed their motion for judgment notwithstanding the verdict, or in the alternative, *552 a Motion to Amend the court's findings. A hearing date was set for April 21, 1993.
At the hearing, the Homeowners Association requested that the lower court amend the final judgment and insert other language.
The language in issue, as was found in the deleted paragraph of the Final Judgment, read:
4. All parties whose title derives from deeds executed subsequent to the recording of the protective covenants in question, are bound by the covenant pertaining to the formation of the property owners association.
After the amendment, the paragraph reads:
All property owners falling under the restrictive covenants are declared members of the property owners association and as such are obligated to live by its bylaws and pay the assessments as required by those bylaws.
Apparently, the amended version contains the same language as that in the original memorandum opinion handed down after trial on February 25, 1993. Because the language in the deleted paragraph referred only to parties whose deeds were recorded subsequent to recording of the covenants, the Homeowners Association agrees that "the language needed to be tightened so that parties whose titles were derived from deeds executed prior to the recording of the protective covenants could not claim exemption from the association." The Homeowners Association contended that this was a simple mistake the judge needed to be advised about, and that no formal motion was necessary. However, appellants contest the amendment under M.R.C.P. 59(e), which states:
A motion to alter or amend the judgment shall be served not later than ten days after entry of the judgment.
In this case, the original pronouncement was that the covenant for the creation of a homeowners association was one that ran with the land and once the covenants were filed with the Chancery Court, this covenant would bind any purchaser. The loose wording of the final judgment contradicts the ultimate holding of the lower court. Because the judgment was not final at that time, it could properly be amended to reflect the original memorandum. Thus, the lower court did not err in amending the judgment either on its own, or at the request of the Homeowners Association.
The Appellants also argue that the judgment notwithstanding the verdict is meritless. When reviewing a motion for judgment notwithstanding the verdict, an appellate court considers the evidence in light most favorable to the party against whom the motion has been made, and disregards any evidence on the part of moving party in conflict with that evidence; if there is credible evidence, and reasonable inferences which may be drawn therefrom, which would support the verdict, the verdict must stand. Bay Springs Forest Products, Inc. v. Wade, 435 So.2d 690 (Miss. 1983). In this case, the lower court was correct in denying the Griffins' motion for judgment notwithstanding the verdict. Considering the evidence in the light most favorable to the Homeowners Association, the law supports the contention that the ability to form a homeowners association is a covenant that runs with the land. Thus, the lower court was not erroneous in allowing the verdict to stand. There is no merit to this issue.

III
The Griffins next assert that the Chancellor erred in granting attorney fees, expenses, and expert witness fees to Tall Timbers and the Association. After the final judgment was awarded, and the Griffin's judgment notwithstanding the verdict motion denied, Tall Timbers moved the court to assess damages for the alleged improper issuance of the preliminary judgment. At the April 21, 1993 hearing, the Chancellor entered its Amended Final Judgment, and awarded attorneys fees in the sum of $21,508.46.
The Griffins now argue that their Complaint sought more than just a preliminary injunction award, but rather that: Count I asked for a declaratory judgment, Count II asked for a restraining order, and Count III asked for a certain construction of the bylaws in the event that Count I and II were refused. Moreover, the appellants argue *553 that at the original hearing, on January 5, 1993, the defendant Homeowners Association would not concede "for the record" that there were no undisputed facts, thus, necessitating the need for trial on February 22, 1993. Thus, the Griffins argue that they should not incur the costs of the trial which was brought about by the defendant's actions. Moreover, the lower court also granted payment to defendant-appellee's expert witness, Don Ginn. Mr. Ginn testified as to the economic benefit of a property owners association as demonstrated by economic comparisons of certain subdivisions with and without a homeowners association. At trial, the Griffins objected to the testimony of Ginn as being irrelevant to the main issue at bar  which was a pure question of law. However, the chancellor allowed Mr. Ginn's testimony, admitting his curiosity as he lived in a subdivision which Ginn had included in preparing his study on property values of neighborhoods with homeowners associations.
The rule is if the relief sought is for an injunction alone, attorneys fees incurred in obtaining dissolution of the injunction must be allowed. However, where the prayer for an injunction is only ancillary to the main relief and the entire case is heard, but not separately on any preliminary motion to dissolve, attorneys fees should not be allowed. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259 (Miss. 1987). In other words, if the relief sought was controlled by the injunction and any incidental relief was dependent upon retaining the injunction, then the chancellor may properly allow attorneys fees upon dissolution of the injunction. Coleman v. Lucas, 206 Miss. 274, 41 So.2d 54 (Miss. 1949).
In this case, the chancellor erred in assessing the attorneys fees to the Griffins. The main prayer of the Griffins' complaint was that, as a matter of law, a homeowners association could not be formed. Thus, the principal relief sought by the Griffins was a declaratory judgment. However, in the event the court held that a homeowners association could be formed, the Griffins asked the lower court for construction of the by-laws.
We find that the injunction was merely incidental or ancillary to their request. With only a declaratory judgment in hand, the plaintiff-appellants could have justified not contributing to the association, thus, making the need for an injunction incidental. Because the injunction, in our view, did not control the Griffins' prayer for relief, we hold that the lower court erred in assessing the attorneys and expert witness fees to the Griffins.

IV
The Griffins also argue that the chancellor erred in amending the covenants. At the hearing on the post-trial motions, the chancellor levied a 25% attorneys fee for the expenses of collecting indebtedness due for maintenance expenses. The covenants state only "attorneys fees of 15%" are collectible. The Appellees argue that this amendment was within the discretion of the lower court, as he granted several of the Griffins' requested amendments by altering the by-laws. The Appellees argue that if they are required to surrender the 25% amended figure, then the concessions made to the Griffins must also be surrendered.
Although they fail to cite any case law as support for their position; throughout their brief, the Griffins provide considerable authority for the proposition that the chancellor's power to rewrite bylaws is no greater than the chancellor's power to judicially alter any written document, and by reference, the Griffins incorporate those authorities into their arguments concerning the alteration of the attorney fee provision. This Court is hesitant to dismiss the issue as one unsupported by authority or unworthy of the fullest consideration, as there is little direct authority available to the litigants or to the courts of this State to guide the application of the "reasonableness" standard announced in Perry v. Bridgetown Community Ass'n, Inc., 486 So.2d 1230 (Miss. 1986). There is even less authority addressing the power of a chancellor to completely rewrite bylaws or covenants found to offend that standard of reasonableness.
The judicial inquiry into the "reasonableness" of a covenant or bylaw enunciated *554 in Perry does not provide the trial court with the authority to rewrite entire provisions the court may deem unreasonable, but rather allows the court to examine the reasonableness of the bylaw in light of the declaration of purpose. Id. at 1234. "Review by the court must be guided by the intent stated in the declaration of purpose and judged by a test of reasonableness." Id. at 1234. The chancery court may not substitute its own considered judgment for that of the homeowner's association nor may it determine that a 25% fee for collection was `more reasonable' than the 15% as stated in paragraph 11 of the covenants. We should only determine whether the bylaw as written is reasonable in light of the declaration of purpose. If the bylaw is unreasonable, the court should strike it, and allow the homeowner's association an opportunity to promulgate a new bylaw through its own procedures.
In the present case, the chancellor modified the attorney's fee provision only after striking other portions of the bylaws relating to collection activities of the attorney that the chancellor deemed "unreasonable." The fact that the court properly finds one provision of a bylaw "unreasonable" in relation to the declaration of purpose, it does not give the court the authority to strike or rewrite other provisions of the bylaws which are not in themselves "unreasonable."
Tall Timbers argues that the chancellor altered the attorney's fee in the bylaws because he struck down as unreasonable a separate provision which allowed the attorney to proceed directly against a homeowner for the payment of delinquent dues or assessments. Thus, the attorney is left with the more time-consuming task of establishing and foreclosing a lien against the property to collect pastdue amounts in the future. The Griffins argue that the additional effort required of the attorney to collect the assessments through foreclosure proceedings justifies the chancellor's order. The Griffins further argue that such a justification for altering the wording of the bylaw misconstrues the interests required to be balanced in order to determine whether a covenant is reasonable and enforceable under Perry, 486 So.2d at 1234.
"Applying a reasonableness standard to a regulation, this Court will consider not only the rights of the individual owner, but also the rights of the other association members who expect maintenance in keeping with the general plan... ." Id. The purpose of balancing these considerations is to ensure that the strength of the association is maintained and the expectations and purpose are not frustrated, while also ensuring that no individual property owner or class of owners is unduly and unexpectedly burdened for the benefit of others in the association. Balancing these considerations to determine the "reasonableness" of a provision takes into account the fact that on occasion the interests of the association and an individual member may clearly diverge. The balancing of interests required in the review of the reasonableness of a covenant or bylaw was discussed in relation to condominium bylaw amendments in Ridgely Condominium Ass'n, Inc. v. Smyrnioudis, 105 Md. App. 404, 660 A.2d 942 (1995). In Ridgely, the Maryland court stated "While we recognize that a more deferential standard may be employed when considering provisions contained in original condominium documentation, we emphasize that later adopted provisions that are passed by less than unanimous approval of all unit owners have the potential to discriminate against certain classes of owners." Id. 660 A.2d at 951.
In the present case, the interests to be protected by balancing the rights of the individual owners and the association as a whole were not represented in the chancellor's inquiry into the reasonableness of the attorney's fee bylaw. Neither the interests of the association nor any individual member would be prejudiced by allowing the 15% attorney's fee provision within the bylaws to stand. While the interest of the association's attorney may be better served by increasing the fee provision, his interests are not part of the balancing inherent in the reasonableness inquiry in Perry, 486 So.2d at 1234.
Paragraph 11 of the covenant states that Talmar, Inc., the original developer and owner, "shall have a lien upon the subject lot or lots second only to liens for taxes and any *555 duly recorded mortgage to secure the payment of the aforementioned dues, fees, and charges including the court costs and an attorney's fee of 15% of the amount due incurred in collection of the same." In the case sub judice, the chancellor made no finding that the provision of a 15% attorney's fee became unreasonable on the basis that the attorney might be required to resort to foreclosure proceedings to collect delinquent fees from individuals in the future. Indeed, it is contrary to the original documents to find that the 15% fee is unreasonable on the ground that the attorney must now undertake foreclosure proceedings, for the document demonstrates that the foreclosure proceedings were contemplated as a possibility at the time the figure was established in the covenants, and yet no higher figure was set in the event the association's attorney resorted to foreclosure.
Tall Timbers argues that the chancellor's alteration of the bylaws was justified as a permissible operation of the inherent power of the chancery court to shape its decrees and judgments so as to effect justice between the parties. Though the chancery court may shape its decrees in such a manner, this principle of equity has not been extended to allow the chancery courts to add to and subtract from written covenants as they deem "reasonable." In cases which specifically involved the power of a chancellor to modify a writing, this Court has stated that "[c]ourts do not have the power to make contracts where none exist, nor to modify, add to, or subtract from the terms of one in existence." Glantz Contracting Co. v. General Elec. Co., 379 So.2d 912, 916 (Miss. 1980); see also First Nat. Bank of Vicksburg v. Caruthers, 443 So.2d 861, 864 (Miss. 1983). The power of the chancellor to substitute his own judgment for that found in the original covenant, or the power of the court of equity, when considering the validity of covenants or bylaws, to alter the substance of a writing, is not reflected in the case law of this or any other jurisdiction brought to the attention of this Court.
Although the chancellor certainly has the power to shape his decrees so as to effect justice between the parties, the attorney for the association is not a party to the present case, and the attorney's interest in a fee from any possible future proceeding to foreclose a lien has little to do with the reasonableness inquiry necessary to any disagreement between certain members of the association and the association itself.
Finally, Tall Timbers argues that the lower court made several alterations in the language of the bylaws in the proceedings below. Consequently, Tall Timbers argues that if this Court holds the Chancery court was without power to alter the attorney's fee provision then all provisions altered by the chancellor should be invalidated. Despite this contention, the chancellor correctly applied the legal standard and found several of the provisions at issue "unreasonable" before completely striking them, and did not attempt to modify or rewrite those provisions. As to the provisions which the chancellor physically modified, such as the provision amended to provide for quarterly assessments as opposed to yearly assessments and collection of dues, Tall Timbers did not file a notice of cross-appeal and is therefore not entitled to receive relief based upon arguments presented by the Griffins.
The issue before this Court is not whether the chancellor was unreasonable in believing that a 25% figure is more equitable compensation, but whether the covenant provision of 15% is unreasonable in light of the intent stated in the declaration of purpose of the covenants, and if unreasonable, whether the chancellor had the authority to add to the language of the covenants. The test of reasonableness to be applied by this Court is the same as that which is to be applied by the chancery court, and the question of the validity of the clear and unambiguous covenant at issue is a matter of law. Perry v. Bridgetown Community Ass'n, Inc., 486 So.2d 1230 (Miss. 1986). We do not find that the 15% fee provision in the covenant is unreasonable, and therefore, this Court holds that the decision of the lower court raising the fee to 25% should be reversed and rendered.

CONCLUSION
The lower court was correct in ruling that the right to form a homeowners association is *556 a covenant that runs with the land. The lower court was also correct in amending its final judgment so that it would not be confusing and would clearly effectuate its purpose. The lower court erred in allowing attorneys fees, expert witness fees and costs for the dissolution of the injunction, as the injunction was incidental to the main prayer for relief. The lower court also erred in balancing the concerns of the Griffins against the Homeowners Association, and thereby amending the covenants to accommodate the concessions made in liberalizing the by-laws and allowing an increase in attorneys fees. We reverse and render on the issue of attorneys fees and expert witness fees assessed against the appellants, and the amending of the covenants to reflect a 25% attorneys fee rather than 15%. The remaining issues are affirmed.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
DAN LEE, C.J., PRATHER and SULLIVAN, P.JJ., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and MILLS, JJ., concur.
McRAE, J., concurs in result only.