MCCLENDON, J.
12This appeal challenges a trial court’s judgment denying three subdivision residents’ request for injunctive relief to prevent a homeowner’s association from operating as such, assessing dues, and controlling access to the subdivision by means of a security gate. We find no error in the trial court’s ruling, and affirm.
BACKGROUND
Plaintiffs, Samuel Bordelon, Cheryl Hensarling and Tony Santoro, are owners of lots and homes in Lake Ramsey Development (LRD), a residential subdivision built around a man-made lake located in St. Tammany Parish. LRD, a planned community, consisted of development in four phases, the first of which began in 1983 with the filing of restrictive covenants in the public records. Those restrictive covenants, as well as the covenants contained in subsequent filings, vested powers of a homeowner’s association in “Lake Ramsey Owner’s Association, Inc.” An attempt was made by lot owners to form Lake Ramsey Owner’s Association, Inc. in 1996, but the organization was later dissolved.
In November of 2002, a group of LRD lot owners organized Homeowners Association of Lake Ramsey, Inc. (HALRI). HALRI subsequently assessed homeowner’s dues in the amount of $400.00 per lot per year. With the funds it generated from assessments, HALRI undertook efforts to repair streets in the subdivision, provided funding for landscaping and insurance for the common areas, established rules for the use of the common areas, and constructed and operated a security gate at the subdivision’s entrance.
On December 12, 2003, plaintiffs filed this lawsuit seeking to enjoin HALRI from operating as a homeowner’s association, specifically, to ^prevent HALRI from maintaining or administering the common areas within LRD, enforcing any of the restrictive covenants against LRD owners or their property, assessing fees, or obstructing or otherwise regulating traffic into or out of LRD. The trial court ordered that the request for preliminary injunctive relief be determined based upon pleadings and affidavits. Both sides submitted extensive exhibits and memoranda to the court. Thereafter, the trial court denied the bulk of the residents’ claims for injunc-tive relief, but enjoined HALRI from restricting the residents’ access to the security gate based upon whether or not they paid homeowner’s dues.
This appeal, taken by plaintiffs, fol *181 lowed.[1]
DISCUSSION
In denying the residents’ claims for in-junctive relief, the trial court made two conclusions: (1) HALRI had authorization to act as a homeowner’s association and handle the tasks enumerated in the subdivision covenants such as collecting assessments and maintaining the common areas, and (2) HALRI’s use and regulation of the security gate was proper. It is settled that a trial court has great discretion in ruling on a request for preliminary injunc-tive relief, and its ruling will not be disturbed on appeal unless a clear abuse of that discretion has been shown. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 2004-0270, p. 2 (La.App. 1st Cir.3/24/05), 906 So.2d 660, 663. Plaintiffs submit that the trial court abused its discretion in refusing to enjoin HALRI from acting as a homeowner’s association and from constructing and operating the security gate.
|4On both issues, the record reflects that the initial subdivision developer, Intrepid, Inc., executed an act establishing covenants, conditions and restrictions for LRD on January 19, 1983 (hereafter referred, to as the “Intrepid Act.”). The Intrepid Act, recorded into the mortgage records for St. Tammany Parish several months later, provides that the restrictions, covenants, conditions and easements contained therein shall be binding on all landowners and their subsequent transferees. With respect to the formation of a homeowner’s association, the Intrepid Act states as follows:
For the purpose of preserving the values and amenities of the development, the Lake Ramsey Homeowner’s Association, a non-profit corporation under the laws of the State of Louisiana has been formed, to which will be delegated the powers and duties of owning, operating, maintaining and administering the common areas, facilities and services within the Lake Ramsey Development, administering and enforcing the covenants, conditions, and restrictions contained herein and imposing the associated charges and assessments in payment therefor.
Article III of the Act provides for mandatory participation in the homeowner’s association, specifying that every owner of a lot or unit which is subject to an assessment “shall be a member of the Association.” Such membership, the Act states, “shall be appurtenant to and may not be separated from ownership of any lot or unit which is subject to assessment.” The Intrepid Act further provides that all streets and easements described on the plat of survey were dedicated as common areas for their usual and intended purposes, which “shall be appurtenant to and shall pass with the title to every lot.”
By virtue of Article IV of the Intrepid Act, entitled “Covenant for Maintenance Assessments,” each lot owner agreed to pay annual assessments or charges and special assessments for capital improvements to the Association. The Act states that the assessments shall be a continuing lien upon the property against which each assessment is made. The | ^covenants provide that the assessments levied by the Association shall be used exclusively to provide services and to promote the recre *182 ation, health and welfare of the residents of the LRD.
At the time the Intrepid Act was executed, a homeowner’s association had not yet been formed. The property comprising the LRD was later transferred by Intrepid -to the bank securing the mortgage thereon, and went through • several subsequent transfers until it was purchased by Southeast Investments, Inc. Southeast Investments, Inc: executed separate acts establishing covenants, conditions and restrictions regarding Phase II, Phase III, and Phase IV of LRD in 1995 and 1999. All of the subdivision docu-' ments contain the same basic language found in the Intrepid Act and outlined above.
In 1996, a group of landowners attempted to set up a homeowner’s association, attempting, to incorporate Lake Ramsey Owner’s Association, Inc.; however, that entity did not operate as a homeowner’s association. On November 27, 2002, HAL-RI was incorporated by lot owner Charles Giarrusso. Consistent with the subdivision’s restrictive covenants, the articles of incorporation state that HALRI was formed for the orderly development of LRD, to provide for the preservation of values and amenities in the community, the maintenance of roadways, open spaces, waterways and other community developments, and to implement and enforce the covenants, deed restrictions and obligations found in the subdivision documents. Membership of the corporation was restricted to lot owners. The corporation’s-by-laws provided that the Board of Directors would be elected by the membership and set forth rules governing the Board’s election. HALRI’s Board" of Directors was authorized to exercise the | ripowers of the corporation, including assessments of fees and dues on members of the corporation consistent with the purpose of the corporation.
In his affidavit, HALRI president Charles Giarrusso attested that the Board determined the needs relative to the common areas and amenities for the LRD, including, among others, major street repairs, ’ landscaping and landscape mainte-nánce, regulation of the unauthorized use of Lake Ramsey, regulation of entry into and use of the streets in LRD, and the purchase of insurance. After assessing the costs involved, the Board levied an assessment of $400.00 for each lot in LRD.
In January of 2003, plaintiffs received an invoice from HALRI charging homeowner’s dues in the amount of $400.00. Plaintiffs refused to pay the assessment. According to Mr. Giarrusso, of the 309 lots assessed, full payment was received on behalf of-273 lots, or 82%, with partial payment being received for another 24 lots, resulting in 96% of the lot owners paying all or part of their homeowner’s dues.
The record reflects that in February of 2003, HALRI announced in its newsletter that its Board of Directors unanimously approved a $750.00 impact fee to be assessed to all new construction. However, in its March newsletter, HALRI stated that it rescinded the impact fee for all members in good standing with the homeowner’s association, but not for those who refused to pay the dues, and threatened to file liens against the property of those lot owners failing to pay the homeowner’s dues.
In April of 2003, HALRI began construction on a security gate at the entrance to LRD on S. Lakeshore Drive. Mr. Giar-russo explained that the Board and HAL-RI members approved of the security gate due to problems with the unauthorized use of Lake Ramsey and potential liability problems associated therewith, as well as the use of LRD’s amenities at all hours of *183 |7the day and night, a series of thefts and vandalism in LRD, and the deterioration of roads resulting from their use by overloaded and unauthorized heavy trucks
In its May 2003 newsletter, HALRI published the names of 19 LRD property owners who refused to pay their dues. Letters were sent to plaintiffs by HALRI in September of 2003 demanding payment of the dues and threatening to file liens against the properties in the event they failed to pay within 30 days.
Construction on the security gate was completed in September of 2003. It was paid for with the assessments and a substantial donation from one of the subdivision’s landowners. Mr. Giarrusso attested that $70,000.00 in major street repair costs undertaken by HALRI was funded by the assessments.
In their first assignment of error, the residents contend that the trial court erred in refusing to enjoin HALRI from exercising the powers and duties of an owner’s association in violation of the subdivision documents. They urge that HALRI is not an “Association” as defined in the subdivision documents, which delegate to the “Lake Ramsey Homeowner’s Association” “and its successors or assigns” the powers to maintain the common areas, facilities and services within the LRD, administer the restriction contained therein and impose charges and assessments to pay for those activities. Plaintiffs submit that it is undisputed that HALRI is not the “Lake Ramsey Homeowner’s Association” or its successor or assign as designated and defined in the subdivision restrictions and to whom the developers delegated the powers and duties of an owner’s association. It cannot exercise those powers, the residents argue, absent an amendment of the subdivision documents with the written consent of at least 80% of the owners. As IsHALRI has no authority to act as a homeowner’s association, plaintiffs posit, HALRI’s conduct in assessing purported homeowner’s dues and impact fees, attempting to enforce those assessments by threatening to file liens against them, obstructing access to and regulating the use of the common boat launch, and operating the security gate violates the subdivision restrictions. Accordingly, they submit, HALRI should be restrained from acting as a homeowner’s association.
Building restrictions are real rights inuring to the benefit of all other lots within a subdivision under a general plan of development. La. Civ.Code art. 777. Restrictive covenants are to be strictly construed, with any doubt resolved in favor of unrestricted property use. Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986). In the cáse of buildings restrictions imposed on a subdivision, the restrictions may be likened to a contract among the property owners and the developer. Woodland Ridge Association v. Cangelosi, 94-2604, p. 5 (La.App. 1st Cir.10/6/95), 671 So.2d 508, 511. Thus, when disputes arise as to the extent or limitation of a restriction affecting immovable property, courts look to the express intention of the party encumbering the property as set forth in the instruments embodying the restrictions, giving due consideration to the entire document. Mariner’s Village Master Association, Inc. v. Continental Properties, 93-1530, pp. 7-8 (La.App. 1st Cir.5/20/94), 639 So.2d 1188, 1192, rev’d on other grounds, 97-2413 (La.4/14/98), 710 So.2d 1054.
In Griffin v. Tall Timbers Development, Inc., 681 So.2d 546 (Miss.1996), the Mississippi court was faced with the issue of whether a subsequent developer had the capacity to form a homeowner’s association, where the subdivision documents vested the original developer with that power and no association was formed by the original developer. The | Hrestrictive *184 covenants made lot owners mandatory members of the association, bound the owner to the association’s by-laws, and stipulated that the restrictions were to “run with the land.” The court concluded that the subsequent developer had the authority to form the association, finding that the intent of the subdivision restrictions was to have a homeowner’s association to which every lot owner would be subject, regardless of whether the original developer owned the development or its subsequent successors or assigns owned it. Id. at p. 551. The court stressed that the lot owners had sufficient notice to anticipate that a property owner’s association could be formed and that they would be bound by the by-laws and dues of that association. Id. at pp. 550-551.
Similarly, the subdivision documents at issue in this case clearly evidence the developer’s intent that a homeowner’s association be formed to control and maintain the common areas of the subdivision. The documents provide for mandatory membership of the owners in the association, which membership “shall be appurtenant to and may not be separated from ownership of any lot or unit which is subject to an assessment.” We agree with HALRI’s position that the right to incorporate the association in conformity with the restrictive covenants was vested in the LRD property owners. The mere fact that an association was not formed when the subdivision was originally developed does not defeat the authority of property owners to subsequently form an association and operate as such. Lot purchasers were clearly on notice that the common areas of the subdivision would be managed by a homeowner’s association and they would be responsible for paying dues and fees to cover the cost of carrying out those activities. For these reasons, we believe the trial court properly construed the subdivision documents to authorize HALRI’s formation and | ^operation as a homeowner’s association, and correctly refused to enjoin HALRI from operating as such.
We next address the residents’ arguments regarding HALRI’s operation of a security gate at the entrance to the subdivision. In so doing, we easily dismiss the residents’ third assignment of error wherein they claim that S. Lakeshore Drive, where the security gate is located, is a public road which may not, under state law, be obstructed. The Intrepid Act makes it clear that all streets and easements shown or described on the subdivision plat are expressly dedicated as common areas, defined as that property available to the association for use and benefit of its members. S. Lakeshore Drive was included on the plat for LRD’s Phase I plan. Subsequent subdivision documents contain express statements that no streets under those phases would be dedicated for public use. Under these circumstances, the residents would have to establish either an implied or tacit dedication of the roadway for public use. They failed to produce evidence to demonstrate an intent on the part of the owner to dedicate it to public use, and there was no evidence suggesting that the roadways had ever been maintained by the local governing authority. See Southern Amusement Co., Inc. v. Pat’s of Henderson Seafood & Steak, Inc., 2003-767, pp. 9-10 (La.App. 3rd Cir.3/31/04), 871 So.2d 630, 636. Therefore, we find no merit to this argument.
Lastly, we consider the residents’ argument that the construction and operation of the security gate violates the restrictive covenants. The Intrepid Act gives to each lot owner “a right and easement of enjoyment in and to the Common Areas which shall be appurtenant to and shall pass with the title to every lot.” The residents urge that for years they have had unrestricted use of the subdivision streets, and submit that there is no provision in the restrictive documents giving *185 HALRI the power to obstruct | nthe subdivision streets. Rather, the residents contend, an amendment to the subdivision restrictions with the written consent of 80% of the lot owners would be necessary to authorize HALRI to operate the security gate.
We disagree. The subdivision documents grant to HALRI the power and duty to maintain and administer the common areas of the subdivision, of which the streets are a part. While the documents do not specifically grant the right to install a security gate to the homeowner’s association, the issue is whether HALRI’s installation and operation of the security gate is a reasonable exercise of its power to maintain and administer the subdivision streets. See Country Club of Louisiana Property Owners Association v. Dornier, 96-0898 at p. 9-10, 691 So.2d at 147. The trial court was presented with evidence showing that HALRI installed the gate because of the unauthorized use of Lake Ramsey by rton-residents and potential liability arising from the use of the lake, various acts of theft and vandalism in the subdivision, and the use of LRD’s amenities at all hours of the day and night, as well as the deterioration of the streets the lot owners were required to maintain caused by overloaded and heavy vehicles. The court found the construction and operation of the gate to be reasonable, and in light of the facts presented, we find no abuse of the trial court’s vast discretion in denying the request for injunctive relief.
CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellants.
AFFIRMED.

. Pursuant to La.Code of Civil Procedure article 3612, an appeal may be taken as a matter of right from an order or judgment relating to a preliminary injunction. A party aggrieved by a judgment either granting or denying a preliminaiy injunction is entitled to an appeal. Country Club of Louisiana Property Owners Association Inc. v. Dornier, 96-0898, p. 2, fn. 1 (La.App. 1st Cir.2/14/97), 691 So.2d 142, 144, fn. 1.