Opinion by JUDGE ROMÁN
*735 ¶ 1 Can a property owner incorporate a homeowners' association after the initial developer filed a declaration expressing an intention to form an association but then failed to do so? We conclude that where the condominium declaration contemplates a homeowners' association, and especially where the covenant runs with the land, a property owner can incorporate a homeowners' association without further consent from the other unit owners. We thus vacate a preliminary injunction enjoining a property owner from acting on behalf of the homeowners' association.
I. Background
A. Facts
¶ 2 The material facts in this case are not disputed. Felix A. DeJean III and Carolyne DeJean (DeJeans) and Colleen A. Grosz (Grosz) each own one unit in a two-unit condominium in Aspen. In the early 1980s, Teresa Schiff (Declarant) purchased the property. In the early 1990s, Schiff built the Lake View Townhomes Condominiums (LVTC). Before either the DeJeans or Grosz had purchased their units, Schiff filed and recorded a condominium declaration on March 7, 1994 (Declaration).
¶ 3 The Declaration states that the condominium project is subject to the Colorado Common Interest Ownership Act (CCIOA), and called for the existence of a unit[1] owners' association (Association) to be formed to manage the LVTC's common areas. The Declaration further states that membership in the Association is automatic for both unit owners and belongs to the condominium unit, and that acceptance of any interest in either unit shall constitute appointment of the Association to manage and control the owners' interests in the common areas. The Declaration states, moreover, that the covenants shall run with the land.
¶ 4 The Association called for in the Declaration, however, was not incorporated before the DeJeans' or Grosz's purchase of their units.
¶ 5 In 1995, Colleen Grosz purchased Unit A of the condominium from the Declarant. In 2000, the DeJeans purchased Unit B. For several years, the two parties managed the common areas of the condominium by informal agreement. However, the relationship became acrimonious, making cooperation regarding management of the common areas difficult.
¶ 6 In March 2013, Grosz incorporated the Association. When the DeJeans learned that the Association had been incorporated, they demanded that Grosz terminate it. Grosz refused. After incorporating the Association, Grosz gave notice to the DeJeans that meetings would be held to draft, establish, and adopt bylaws, and that an annual Association meeting would be held. Grosz also sent a draft of the proposed bylaws to the DeJeans for review prior to adoption. The DeJeans did not respond to any notices or attend any of the meetings, nor did the DeJeans provide any feedback on the proposed bylaws. Grosz held the Association meetings without the DeJeans, and, because she constituted a quorum in their absence, adopted the bylaws on behalf of the Association.
B. Trial Court Disposition
¶ 7 The DeJeans sued Grosz and the Association, asserting seven claims, all of which are based on Grosz's unilateral incorporation of the Association. All of the DeJeans' claims rest on their alleged lack of notice and *736 consent to the incorporation of the Association and their membership in it.[2]
¶ 8 After filing their complaint, the DeJeans filed a motion for preliminary injunction seeking to enjoin the Association from transacting business during the pendency of this litigation and to enjoin Grosz from acting on the Association's behalf. Both Grosz and the Association filed responses in opposition, and a hearing was held. The trial court issued a preliminary injunction restraining the Association from transacting any business and Grosz from representing that she is authorized to speak and act on the Association's behalf.
¶ 9 Following the hearing, the trial court issued a preliminary injunction, finding, as pertinent here, that the Declaration provides that (1) owners shall be members of the Association, (2) such membership is appurtenant to ownership, (3) title to the property was subject to this provision when purchased, (4) the DeJeans had notice that they were to be members of the Association, (5) the DeJeans could not waive the requirement that there be an Association, and (6) the DeJeans constructively consented to LVTC being governed by an Association.
¶ 10 Nonetheless, the trial court found that because no Association existed when the DeJeans purchased Unit B, the DeJeans have a reasonable probability of success in contesting how the Association was created.
C. Colorado Common Interest Ownership Act
¶ 11 The General Assembly enacted CCIOA based on the Uniform Common Interest Ownership Act (1982) (Uniform Act). Platt v. Aspenwood Condo. Ass'n, Inc., 214 P.3d 1060, 1064 (Colo.App.2009). The legislative purpose of CCIOA is to encourage the establishment of homeowners' associations. "[I]t is in the best interests of the state and its citizens to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities." § 38.33.3-102(a), C.R.S. 2014. "[T]he continuation of the economic prosperity of Colorado is dependent upon the strengthening of homeowner associations in common interest communities...." § 38-33.3-102(1)(b).
¶ 12 The General Assembly thus has made clear that "it is the policy of this state to promote effective and efficient property management through defined operational requirements that preserve flexibility for such homeowner associations." § 38-33.3-102(1)(d).
¶ 13 With this in mind, we turn to the preliminary injunction.
II. Preliminary Injunction A. Standard of Review
A. Standard of Review
¶ 14 A trial court should grant injunctive relief "sparingly and cautiously and with a full conviction ... of its urgent necessity." Rathke v. MacFarlane, 648 P.2d 648, 653 (Colo.1982). We ordinarily review the trial court's decision to issue a preliminary injunction for an abuse of discretion. Id ."Under that standard, we examine the court's ruling to determine whether it is based on an erroneous application of the law, or is otherwise manifestly arbitrary, unreasonable, or unfair." Bloom v. Nat'l Collegiate Athletic Ass'n, 93 P.3d 621, 623 (Colo.App.2004) (citations omitted).
¶ 15 When, as in this case, the controlling facts are undisputed, however, the *737 legal effect of those facts constitutes a question of law. Lakeview Assocs., Ltd. v. Maes, 907 P.2d 580, 583-84 (Colo.1995) ; see also Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe, 107 P.3d 402, 406 (Colo.App.2004) ("[I]f the underlying facts are undisputed, fact finding is not required, and the legal effect of those facts constitutes a question of law."). We review the resolution of such a question de novo. See Lakeview Assocs., 907 P.2d at 584.
B. The Rathke Factors
¶ 16 Grosz contends that the trial court erred in issuing the injunction because the DeJeans failed to demonstrate one of the Rathke factors-namely, that they had a reasonable probability of success on the merits.[3] We agree.
¶ 17 To issue a preliminary injunction, the trial court must find that the moving party has demonstrated the following elements:
(1) a reasonable probability of success on the merits;
(2) a danger of real, immediate, and irreparable injury which may only be prevented by injunctive relief;
(3) that there is no plain, speedy, and adequate remedy at law;
(4) that the granting of a preliminary injunction will not disserve the public interest;
(5) that the balance of equities favors the injunction;
(6) that the injunction will preserve the status quo pending a trial on the merits.
Rathke, 648 P.2d at 653-54 (citations omitted). If any of these criteria are not met, preliminary injunctive relief is unavailable. Id. at 654.
1. Probability of Success on the Merits
¶ 18 Here, both parties agree the determinative factor regarding success on the merits for all seven claims is whether the DeJeans had notice of the Association and whether they consented to membership in it.
¶ 19 Grosz contends that the DeJeans had notice of the Association and consented to membership in it when they purchased Unit B.[4] According to Grosz, this necessarily means the Association is valid and because the DeJeans' membership in it is automatic pursuant to the Declaration, they have no reasonable likelihood of success on the merits.
¶ 20 The DeJeans counter that the Declaration did not grant Grosz the authority to unilaterally incorporate the Association. According to the DeJeans, because the Association was created after the Declarant sold the first unit, and without the DeJeans' consent, it is reasonably likely that they will prevail on the merits of all seven claims.
¶ 21 Although no Colorado case has specifically addressed whether a homeowner can incorporate a unit owners' association where the initial developer failed to do so, the Colorado Supreme Court addressed a similar issue in Evergreen Highlands Association v. West, 73 P.3d 1 (Colo.2003). There, the supreme court held that language in the declaration or original covenants can suffice to create a common interest community by implication.
¶ 22 In Evergreen, the supreme court considered whether a community fell within the definition of a common interest community under CCIOA and "whether, in the absence of a covenant imposing mandatory dues, the homeowners association has the implied power to collect assessments from all lot owners to pay for the maintenance of common areas of the subdivision." Id. at 2. The court concluded *738 "that the declarations for Evergreen Highlands were sufficient to create a common interest community by implication with the concomitant power to impose mandatory dues on lot owners to pay for the maintenance of common areas of the subdivision." Id. ; see also Hiwan Homeowners Ass'n v. Knotts, 215 P.3d 1271, 1274 (Colo.App.2009) ("[I]f the documents in Evergreen were sufficient to establish a common interest community by implication, we conclude the plats and restrictive covenants here, filed and recorded at the same time the subdivision was created, were sufficient to constitute a declaration under the Act.").
¶ 23 Next, we look to authority from other jurisdictions on the precise issue of whether a homeowner may incorporate a homeowners' association where the initial developer failed to do so. "Although not binding as precedent, we may look to decisions of other jurisdictions for persuasive guidance on matters that are of first impression to us." People v. Weiss, 133 P.3d 1180, 1187 (Colo.2006).
¶ 24 In Bordelon v. Homeowners Association of Lake Ramsey, Inc., 916 So.2d 179 (La.Ct.App.2005), the initial developer of a subdivision executed a document establishing covenants similar to the Declaration here. That declaration provided for mandatory participation in the homeowners' association, "specifying that every owner of a lot or unit which is subject to an assessment 'shall be a member of the Association.' " Id. at 181. No association had been formed at the time the declaration was executed, however. Indeed, the property comprising the development went through several transfers of ownership before the association was incorporated, and the association was not incorporated until nearly twenty years after execution of the declaration. Id. at 182. As in this case, a single lot owner incorporated the homeowners' association.
¶ 25 The plaintiff property owners in Bordelon, like the DeJeans, sought to enjoin the association from exercising the powers and duties of an association, arguing that the association could not exercise the powers of the association without the written consent of the homeowners in the subdivision. Id. at 183.
¶ 26 The Louisiana Court of Appeals examined the documents in question and concluded that the subdivision documents
clearly evidence the developer's intent that a homeowner's association be formed to control and maintain the common areas of the subdivision. The documents provide for mandatory membership of the owners in the association, which membership 'shall be appurtenant to and may not be separated from ownership of any lot or unit which is subject to an assessment.' .... The mere fact that an association was not formed when the subdivision was originally developed does not defeat the authority of property owners to subsequently form an association and operate as such. Lot purchasers were clearly on notice that the common areas of the subdivision would be managed by a homeowner's association and they would be responsible for paying dues and fees to cover the cost of carrying out those activities.
Id. at 184.[5]
¶ 27 Likewise, in Griffin v. Tall Timbers Development, Inc., 681 So.2d 546 (Miss.1996), the original development company filed instruments containing restrictions and covenants similar to those contained in the Declaration at issue here. That declaration stated that all restrictions, covenants, and conditions were to run with the land and that "each owner shall become a member of the [Homeowners'] Association." Id. at 548.
¶ 28 The plaintiffs in Griffin argued that the right to create a mandatory homeowners' association "was a right personal to [the original developer] and not one that ran with the *739 land; and that once the [original developer] conveyed the property, the right to create a mandatory property owners association expired, leaving only the right of voluntary association." Id. at 549.
¶ 29 Disagreeing with the plaintiffs, the Mississippi Supreme Court stated:
[T]he covenants here specifically state that they are to run with the land. Such covenants put lot owners on notice that they will have to become members of the property owners association, owned and operated by either Talmar [the original developer], its successors or its assigns. The lot owners were put on notice that they will be subject to fees or dues assessed by the homeowners association. Nowhere in the covenants does it state that if Talmar fails to make a property owners association, future owners of the development will not be able to create one either. Because of the explicit language used in the covenants, this Court finds that White Cypress Lakes property owners had sufficient notice to anticipate that a property owners association could be formed and that they would be bound by the by-laws and dues of that association.
Id. at 550-51.
¶ 30 The DeJeans have provided us with no authority to the contrary on this point, and we have found none. Accordingly, we are persuaded by the reasoning in Evergreen, Bordelon, and Griffin, and conclude that where the intent of the developer is clear and, especially where the declaration states that the covenants are to run with the land, the right to form the association also runs with the land. Moreover, owners are on notice that an owners' association, of which they are automatically members, can be formed, even after a delay, by another homeowner.
¶ 31 Accordingly, we conclude that the DeJeans had notice of the Association and consented to membership in it when they purchased their unit, regardless of when the Association was ultimately incorporated.
¶ 32 The conclusion we reach is consistent with Colorado's law of covenants. "Whether a covenant runs with the land turns on the construction of relevant documents." Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs., 867 P.2d 70, 74 (Colo.App.1993). Here, the pertinent provision of the Declaration states:
Declarant does hereby publish and declare that the following terms, covenants, conditions, easements, uses, restrictions, limitations and obligations shall be deemed to run with the land, shall be a burden and benefit to ... any persons acquiring o[r] owning interest in the real property improvements thereon, their grantees, successors, heirs, executors, administrators, devisees or assigns, and the name of the condominium herein created shall be Lake View Townhome Condominiums.
Declaration, introductory art. (emphasis added).
¶ 33 The Declaration then provides that the following benefits and burdens run with the land and the Association "shall perform functions to hold and manage the property ... so as to further the interests of the owners of both Condominium Units [and] shall have all powers necessary or desirable to effectuate such purposes." Declaration, art. 18(a). Moreover, the Declaration unequivocally states that an owner "shall automatically be a member of the Association." Declaration, art. 18(b).
¶ 34 The Declaration further grants the Association "all of the powers necessary to govern, manage, maintain, repair, rebuild, administer and regulate the Common Interest Community, and to perform all duties required of it." Declaration, art. 19(a).
¶ 35 Finally, pursuant to the Declaration, the Association "shall have and may exercise any right or privilege given to it expressly by this Declaration, the Articles or the By-Laws, or reasonably to be implied from the provisions of those documents ... or which may be necessary or desirable to fulfill its duties, obligations, rights or privileges." Declaration, art. 19(j).
¶ 36 Accordingly, under the circumstances here, the covenants in the Declaration subjecting the owners of both units to automatic membership in the Association are intended to run with the land and therefore the DeJeans *740 had notice and consented to be members of the Association when they acquired title.
2. Section 38-33.3-301 and Restatement of Property Section 6.3
¶ 37 Relying on section 38-33.3-301, C.R.S.2014, the DeJeans contend that Grosz was required to obtain their consent before incorporating the Association. This statute states that the "association shall be organized no later than the date the first unit in the common interest community is conveyed to a purchaser." Id . We find this argument unavailing.
¶ 38 First, the stated legislative purpose of CCIOA is to encourage the creation of homeowner associations. § 38-33.3-102(1)(a) ("[I]t is in the best interests of the state and its citizens to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities."). In this regard the language of section 38-33.3-301 stating that an association shall be organized is part of a broader statutory scheme that indicates a preference that an association be formed.
¶ 39 Second, section 38-33.3-301 concerns the relationship between the initial developer and original owners, serving to ensure that property owners are involved in the governance of the subdivision even while the developer still controls the association. This section is silent on the issue of delayed incorporation but is modeled after section 3-101 of the Uniform Act, which provides: "A unit owners' association must be organized no later than the date the first unit in the common interest community is conveyed." Notably, the first comment to section 3-101 explains:
The existence of the structure clarifies the relationship between the developer and other unit owners and makes it easy for the developer to involve unit owners in the governance of the common interest community even during a period of declarant control reserved pursuant to Section 3-103(d).
Uniform Act § 3-101 cmt. 1.
¶ 40 The DeJeans also direct us to the Restatement (Third) of Property: Servitudes (2001) (Third Restatement). However, we do not see how section 6.3 of the Third Restatement supports the DeJeans' position. Section 6.3(1) of the Third Restatement provides:
If creation of an association has not otherwise been provided for in a common-interest community, and has not been expressly excluded by the declaration , the developer, or the owners of a majority of the lots or units not owned by the developer, may create an association to manage the common property and enforce the servitudes contained in the declaration. All members of the common-interest community are automatically members of the association, which is governed by the provisions of this Chapter.
(Emphasis added.)
¶ 41 Here, unlike the position in section 6.3 of the Third Restatement, the Declaration specifically includes language contemplating that an association will exist to manage the common areas of the LVTC. Moreover, we are unaware of any jurisdiction interpreting section 6.3 of the Third Restatement in the way the DeJeans would have us interpret it.
¶ 42 Accordingly, we conclude that as a matter of law the DeJeans do not have a reasonable probability of success on the merits of their claims. Therefore, the preliminary injunction is vacated.
III. Attorney Fees
¶ 43 Grosz contends that as the prevailing party in this appeal she is entitled to costs and attorney fees under section 38-33.3123(1)(c), C.R.S. 2014, incurred both in the trial court and on appeal. In response, the DeJeans argue that Grosz must prevail in the litigation as a whole to receive attorney fees. We agree with the DeJeans.
¶ 44 Section 38-33.3-123(1)(c) states as follows: "In any civil action to enforce or defend the provisions of this article or of the declaration, bylaws, articles, or rules and regulations, the court shall award reasonable attorney fees, costs, and costs of collection to the prevailing party."
*741 ¶ 45 At this point in the case there is no prevailing party because there has been no resolution on the merits. See Anderson v. Pursell, 244 P.3d 1188, 1196 (Colo.2010) (a preliminary injunction does not adjudicate the ultimate rights of the parties and is not determinative of the merits); K9Shrink, LLC v. Ridgewood Meadows Water & Homeowners Ass'n, 278 P.3d 372, 379 (Colo.App.2011) (holding that a resolution on the merits necessitated affirming the award of attorney fees).
¶ 46 Accordingly, we decline to award costs and attorney fees.
IV. Conclusion
¶ 47 The preliminary injunction of the trial court is vacated.
Ashby and Márquez* , JJ., concur.

We use the terms "unit owners association" and "homeowners association" interchangeably because the parties refer to both.

The first claim seeks declaratory relief pursuant to section 7-126102(2), C.R.S. 2014, that the DeJeans are not members of the Association, the Association has no right to be incorporated, any actions taken by the Association are invalid, and the Association should be judicially dissolved. The second claim is for a preliminary injunction pursuant to section 7-134-302(3), C.R.S.2014, to prevent the Association from transacting any business, entering into any contract, or otherwise incurring liabilities on behalf of the Association; the third claim seeks a permanent injunction for the same. The DeJeans' fourth claim seeks judicial dissolution of the Association pursuant to section 7-134-302(2)(d), C.R.S.2014. The fifth and sixth claims, in the event that the Association is deemed to have been validly incorporated, are ultra vires claims under section 7-123-104(2)(a), C.R.S.2014, against the Association and Grosz, respectively, seeking to enjoin any future acts of or on behalf of the Association. The seventh claim, against Grosz personally, is one for unauthorized assumption of corporate powers.

The trial court and the parties addressed the remaining Rathke factors as well. However, because we conclude that the DeJeans cannot demonstrate the first Rathke factor-a reasonable probability of success on the merits-we need not address them all here. See Gitlitz v. Bellock, 171 P.3d 1274, 1278 (Colo.App.2007).

Because the Declaration limits membership in the Association to only two members(the owners of Unit A and Unit B) and the DeJeans' claims rest on the assertion that they are not members of the Association, only Grosz is left with the power to act on behalf of the Association. Thus, although five claims are asserted against the Association and two against Grosz, all effectively challenge Grosz's power to act on behalf of the Association.

Notably, Louisiana has a statute similar to section 38-33.3-301, C.R.S.2014. Compare La.Rev.Stat. Ann. § 9:1123.101 (2015) ("A unit owners' association shall be organized no later than the date the condominium is created. The membership of the association at all times shall consist exclusively of all the unit owners...."), with § 38-33.3-301 ("A unit owners' association shall be organized no later than the date the first unit in the common interest community is conveyed to a purchaser. The membership of the association at all times shall consist exclusively of all unit owners....").

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2014.