Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

## 2018 CO 57

**No. 15SC701, <u>McMullin v. Hauer</u>—Colorado Common Interest Ownership Act—Common-Interest Communities—Homeowners' Associations.**

The supreme court reviews the court of appeals' opinion affirming the trial court's order finding that the recorded instruments in this case were sufficient to create both a common-interest community by implication and an unincorporated homeowners' association.

The supreme court holds that the recorded instruments were insufficient under the Colorado Community Interest Ownership Act to create a common-interest community by implication.  Accordingly, the court reverses the judgment of the court of appeals and remands for further proceedings consistent with this opinion.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2018 CO 57

---

**Supreme Court Case No. 15SC701**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA2283

---

**Petitioners:**

Crea J. McMullin and Martha E. McMullin,

v.

**Respondents:**

John Hauer and Sena Hauer, individually and on behalf of the homeowners association of Two Rivers Estates; Lincoln Trust FBO John Hauer; Joseph Conrado; and Kelly Conrado.

---

**Judgment Reversed**
*en banc*
June 18, 2018

---

**Attorney for Petitioners:**
David R. Medina
*Wheat Ridge, Colorado*

**Attorneys for Respondents John Hauer, Sena Hauer, and Lincoln Trust FBO John Hauer:**
Law Office of Leigh H. Singleton, LLC
Leigh H. Singleton
*Denver, Colorado*

**Attorneys for Respondents Joseph Conrado and Kelly Conrado:**
Law Office of John A. Vanderbloemen, LLC
John A. Vanderbloemen
*Steamboat Springs, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE GABRIEL** does not participate.

¶1 This land dispute concerns the ownership of seventeen acres of "common open space" in a purported common-interest community. Twenty years ago, Petitioners Crea and Martha McMullin ("the McMullins") acquired thirty acres of land in Rio Blanco County, intending to develop a rural subdivision. The McMullins recorded a final plat, which created seven lots along with seventeen acres of common open space, and entered into a subdivision agreement with the County. The plat identified the subdivision as "Two Rivers Estates."

¶2 For the next eight years, the McMullins were unable to sell any of the lots. During that time, the McMullins mortgaged six of the seven lots to finance the construction of a family lodge on one of the lots. They did not mortgage or encumber the common open space. When the McMullins became unable to pay the loans, the mortgagee foreclosed on Lots 2 and 3, which were then purchased by Respondents Joseph and Kelly Conrado ("the Conrados") and John and Sena Hauer ("the Hauers"), respectively. Still under financial strain, the McMullins also sold Lot 1 to the Hauers and Lots 4, 5, 6, and 7 to Lincoln Trust Company FBO John Hauer.

¶3 After acquiring six of the seven lots, the Hauers and Lincoln Trust Company filed suit to quiet title to their respective lots. The Hauers asserted that Two Rivers Estates was a common-interest community under the Colorado Common Interest Ownership Act ("CCIOA"), §§ 38-33.3-101 to 402, C.R.S. (2017), and that their lots included appurtenant rights in the common open space through an unincorporated homeowners' association created by the common-interest community.

¶4      After a bench trial, the trial court found that the recorded final plat, certain deeds, and the subdivision agreement established both an implied common-interest community and an unincorporated homeowners' association that held equitable title in the open space. The court further concluded that the Hauers, Lincoln Trust Company, and the Conrados were members of the unincorporated homeowners' association; that each lot owner had a duty to contribute 1/7th of the common expenses to the homeowners' association; and that the homeowners' association had power to levy assessments to collect those expenses. The McMullins appealed, and the court of appeals affirmed in a split, published decision, with the majority largely agreeing with the trial court's analysis. Hauer v. McMullin, 2015 COA 90, ¶ 1, ___, P.3d ___. We granted the McMullins' petition for a writ of certiorari,[1] and now reverse.

## I. Facts and Procedural History

¶5      In 1998, the McMullins acquired thirty acres of land overlooking the White River in Rio Blanco County. The McMullins intended to develop a rural subdivision and sell several lots, keeping one lot to build a family lodge. To that end, the McMullins submitted a final plat to the Board of County Commissioners of Rio Blanco County, which was approved and recorded in 2001. The final plat identified the property as Two Rivers Estates and divided the subdivision into seven lots, leaving about seventeen

---

[1] We granted certiorari to review the following issue:

1. Whether the court of appeals erred in holding that Two Rivers Estates is a common interest community by implication.

4

acres of "common open space" undivided. Relevant here, the recorded final plat included a map of the seventeen acres of common open space, and notices on the final plat provided that a "private access road," domestic wells to service the subdivision, and "common ownership and maintenance" would be the responsibility of the "Home Owner's Association." The final plat also stated that "[t]he covenants that accompany the subdivision are filed in the office of the Rio Blanco County Clerk and Recorder in Book __ Page __." No such covenants were filed, however.

¶6　On the same day the final plat was approved, the Board of County Commissioners and the McMullins also entered into a subdivision agreement obligating the McMullins to conform to the conditions and commitments as approved on the final plat:

> The developer shall conform to all the conditions and commitments as proposed and approved on the preliminary plat and plan and as approved on the final plat . . . . This agreement shall be binding upon the parties, their heirs, executors, successors and assigns.

¶7　Over the next eight years, the McMullins failed to sell any of the property's seven lots. In the meantime, the McMullins mortgaged six of the seven lots (but not the common open space) in order to finance the construction of a family lodge on Lot 2. Lots 2 and 3 fell into foreclosure, and were then purchased by the Conrados and Hauers, respectively. Still under financial strain, the McMullins also sold Lot 1 to the Hauers and Lots 4, 5, 6, and 7 to Lincoln Trust Company.

¶8　In 2011, the Hauers and Lincoln Trust filed a complaint on behalf of themselves and "the homeowners' association of Two Rivers Estates" to quiet title to all rights in

5

their property in Two Rivers Estates, including a claimed interest in the common open space through an unincorporated homeowners' association.

¶9     After a two-day bench trial, the court ruled in favor of the Hauers.  Relying on Evergreen Highlands Association v. West, 73 P.3d 1 (Colo. 2003), the trial court held that "a common interest community was created by implication," and that an unincorporated homeowners' association had been created with "the stated purpose to own and maintain the common property."  The court concluded that the Hauers, Lincoln Trust, and the Conrados were members of this unincorporated homeowners' association, and that the association held equitable title to the common open space and private access road.  The court further ruled that each lot owner had a duty to contribute 1/7th of the common expenses to the homeowners' association, and that the homeowners' association had power to levy assessments to collect those expenses.  The McMullins appealed.

¶10    In a split, published decision, the court of appeals affirmed.  Hauer, ¶ 1.  The division majority held that the recorded final plat, the deeds, and the subdivision agreement constituted declarations sufficient under CCIOA to establish an "implied assessment authority in a common interest community" encompassing the seven lots at the common-interest space in the Two Rivers Estates subdivision.  Id. at ¶ 18.  Relying in part on Evergreen Highlands, the majority further concluded that the declarations also established an unincorporated homeowners' association with the power to levy assessments.  Id. at ¶¶ 19–20, 26.  It rejected the McMullins' contention that their warranty deed established their ownership of the common-interest space and that

6

neither the Hauers' nor the Conrados' deeds, nor anything else in the record, conveyed the common-interest space to either party. Instead, the majority agreed with the trial court that because the final plat stated "common ownership and maintenance" of subdivision property would be provided by the homeowners' association, it could properly infer that the common open space was appurtenant to each lot, and that with the conveyance of each lot, an appurtenant interest in the common open space was conveyed as well. See id. at ¶ 21.

¶11 Judge Gabriel dissented in relevant part, arguing that the final plat, deeds, and subdivision agreement did not, when read together, establish a declaration sufficient to create a common-interest community. Id. at ¶ 46 (Gabriel, J., concurring in part and dissenting in part). Judge Gabriel reasoned that the majority's rationale necessarily implied:

> (1) the existence of the required homeowners' association or some other appropriate entity; (2) that title to the [common open space] was transferred to this nonexistent association or entity; (3) that the lot owners agreed to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a sufficient "declaration"; and (4) that the implied but nonexistent association or entity had the power to levy assessments.

Id. at ¶ 62. "[S]uch a series of implications," Judge Gabriel wrote, could not be justified under Evergreen Highlands. See id.

¶12 We granted the McMullins' petition for a writ of certiorari to review whether the court of appeals erred in holding that Two Rivers Estates is a common-interest community by implication.

7

## II. Analysis

### A. Standard of Review

¶13    In an appeal from a bench trial, we defer to the trial court's factual findings but review its legal conclusions, including questions of statutory interpretation, de novo. Sandstead-Corona v. Sandstead, 2018 CO 26, ¶¶ 37–38, 415 P.3d 310, 317. We also review de novo the interpretation of contracts and recorded instruments. Pulte Home Corp. v. Countryside Cmty. Ass'n, Inc., 2016 CO 64, ¶ 23, 382 P.3d 821, 826. Whether reading a statute, a contract, or a recorded instrument, we consider the text as a whole, harmonizing, when possible, all sections or provisions, and giving words their plain and ordinary meaning. See Sandstead, ¶ 39, 415 P.3d at 317; Pulte Home, ¶ 23, 382 P.3d at 826.

### B. The Colorado Common Interest Ownership Act

¶14    The Colorado Common Interest Ownership Act was enacted to "establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities." § 38-33.3-102(1)(a), C.R.S. (2017). It defines "common interest community" as "real estate described in a declaration with respect to which a person, by virtue of such person's ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a declaration." § 38-33.3-103(8), C.R.S. (2017); see also Evergreen Highlands, 73 P.3d at 8 (defining "common interest communities" as "residential communities in which there exists a mandatory obligation or servitude imposed on individual owners to pay for common elements of the community").

8

¶15     Under CCIOA, a common-interest community may be created "only by recording a declaration executed in the same manner as a deed." § 38-33.3-201(1), C.R.S. (2017). A declaration is "any recorded instruments however denominated, that create a common interest community, including any amendments to those instruments and also including, but not limited to, plats and maps." § 38-33.3-103(13). Thus, "a declaration need not consist of a single document." Pulte Home, ¶ 43, 382 P.3d at 829. That said, for one or more documents to create a common-interest community (and thus amount to a declaration), "they must, at a minimum, (1) establish an obligation to pay for various expenses associated with common property and (2) attach that obligation to individually owned property." Id. at ¶ 44, 382 P.3d at 829 (emphasis in original).

¶16     In addition to the obligation to pay for expenses associated with common property, every declaration must also, "at a minimum, contain the mandatory components listed in section 38-33.3-205(1) of [CCIOA]." Ryan Ranch Cmty. Ass'n, Inc. v. Kelley, 2016 CO 65, ¶ 28, 380 P.3d 137, 143 (citing § 38-33.3-205(1)(a)–(q), C.R.S. (2017)). Section 38-33.3-205(1) of CCIOA mandates that a declaration "shall" include, among other things:

- the name of the common-interest community and the homeowners' association;

- a description of any limited common elements;

- an allocation to each unit of the allocated interests;

- any restrictions on the use, occupancy, and alienation of the units;

- the recording data for recorded easements and licenses appurtenant to, or included in, the community; and

9

- reasonable provisions concerning the manner in which notice of matters affecting the community may be given to unit owners by the association or other unit owners.

§ 38-33.3-205(1)(a), (f), (k), (l), (m), (o).  Additionally, "[t]he declaration <u>may</u> contain any other matters the declarant considers appropriate." § 38-33.3-205(2) (emphasis added).

¶17    Lastly, section 38-33.3-301 provides that "[a] unit owners' association shall be organized no later than the date the first unit in the common interest community is conveyed to a purchaser."  § 38-33.3-301, C.R.S. (2017).  By statute, "[t]he association shall be organized as a nonprofit, not-for-profit, or for-profit corporation or as a limited liability company."  <u>Id.</u>  Failure "to incorporate or organize as a limited liability company," though, "will not adversely affect . . . the existence of the common interest community." <u>Id.</u>

## C. Application

¶18    Here, the court of appeals concluded that the recorded final plat, the individual deeds to lot owners, and the subdivision agreement, taken together, constituted a declaration sufficient to establish both an implied common-interest community and an unincorporated homeowners' association under CCIOA and this court's decision in <u>Evergreen Highlands</u>.  <u>Hauer</u>, ¶ 14.  We disagree.

¶19    Here, the recorded final plat includes a map outlining common-ownership space, as well as notices that  a "private access road," domestic wells, and "common ownership and maintenance" would be the responsibility of an unnamed homeowners' association.   The individual deeds specify that the properties were purchased "according to the plat" and included all "appurtenances."  The subdivision agreement

entered into by the McMullins and Rio Blanco County simply reaffirms that "[the McMullins] shall conform to all the conditions and commitments as proposed and approved on the preliminary plat and plan, and as approved on the final plat and in the final plan submittals."

¶20 Critically, these documents, even taken together, do not expressly obligate the lot owners to pay for expenses associated with the common property, let alone attach that obligation to individually owned property. See § 38-33.3-103(8); Pulte Home, ¶ 44, 382 P.3d at 829 (holding that a declaration must both "establish an obligation to pay for various expenses associated with common property and . . . attach that obligation to individually owned property." (Emphasis in original)). Moreover, neither the plat nor the subdivision agreement (nor anything else in the record) actually created a homeowners' association. Furthermore, none of the individual deeds conveyed to the lot owners an undivided interest in the common space. Though the deeds conveyed the specific lots described, "together with all and singular the hereditaments and appurtenances thereto," there is no evidence that the common space was appurtenant to the lot owners' property. See Restatement (Third) of Property: Servitudes § 6.2 cmt. b (Am. Law. Inst. 2000) ("To constitute a common-interest community, the common property must be appurtenant to individually owned property.").

¶21 Finally, "[e]very declaration must, at a minimum, contain the mandatory components listed in section 38-33.3-205(1) of [CCIOA]." Ryan Ranch, ¶ 28, 380 P.3d at 143 (emphasis added) (citing § 38-33.3-205(1)(a)–(q)). As the Hauers conceded below,

11

the purported declaration failed to include several of these statutorily mandated components.

¶22    Here, the court of appeals, relying on our decision in Evergreen Highlands, nevertheless held that a common-interest community was created by implication. Hauer, ¶¶ 18, 29. But Evergreen Highlands cannot be read to sustain such a conclusion.

¶23    In that case, we held that the declarations for the Evergreen Highlands Subdivision were sufficient to create a common-interest community by implication with the concomitant power to impose mandatory dues on lot owners to pay for the maintenance of common areas of the subdivision. See Evergreen Highlands, 73 P.3d at 2, 9. But, unlike here, the declarations in that case included recorded covenants; a plat noting that a park area would be conveyed to the homeowners' association; articles of incorporation for the homeowners' association; and a deed by which the developer quitclaimed his ownership in the park area to the homeowners' association. Id. at 9. Thus, quite unlike the situation in this case, the declarations in Evergreen Highlands "made clear that a homeowners association existed, it owned and maintained the park area, and it had the power to impose annual membership or use fees on lot owners." Id. Indeed, the homeowners' association had been operating for several decades, had been incorporated, and was required by its articles of incorporation to "'own, acquire,

build, operate, and maintain' the common area," "to pay taxes on same,"[2] and to "determine annual membership or use fees." Id. at 2, 9.

¶24     Although the Evergreen Highlands declaration "expressly create[d] an association for the purpose of managing common property," it failed to provide the homeowners' association with an adequate funding mechanism. See id. at 9 (quoting Restatement (Third) of Property: Servitudes § 6.2 cmt. a). Consequently, after several decades of relying on voluntarily paid dues, the homeowners' association was unable to continue to maintain the common areas. The homeowners' association in that case was thus "placed in the untenable position of being obligated to maintain facilities and infrastructure without any viable economic means by which to do so." Id. at 4. So, "to avoid the grave public policy concerns this outcome would create," this court relied on the Restatement (Third) of Property: Servitudes to conclude that "[a]n implied obligation [to pay assessments] may be found" when a "declaration expressly creates an association . . . but fails to include [an adequate] mechanism for providing the funds necessary to carry out its functions." See id. at 4, 9 (emphasis added) (internal quotation marks and ellipses omitted) (quoting Restatement (Third) of Property: Servitudes § 6.2 cmt. a).

---

[2] In Evergreen Highlands, the homeowners' association was tasked with paying taxes on the common space. By contrast, the McMullins had been paying taxes separately for the common open space since 1998, which would have been improper under CCIOA if a common-interest community actually existed. See § 38-33.3-105(2) (providing that, in a common-interest community, "the common elements shall not be separately taxed or assessed").

¶25 By contrast, the recorded documents here did not expressly create a homeowners' association. The court of appeals reasoned that principles of equity supported a conclusion that the declarations here were sufficient to create an unincorporated homeowners' association because "the McMullins intended" to create such an association. Hauer, ¶ 20. In so doing, the court relied on DeJean v. Grosz, 2015 COA 74, 412 P.3d 733, for the proposition that "[w]here the declarations establish that the developer intended to create a homeowners association, a court may create an implied homeowners association[ ]." Id. (citing DeJean, ¶ 30, 412 P.3d at 739). However, DeJean addressed whether a homeowner could form a homeowners' association when the initial developer had filed a declaration expressing his intent to form one, but failed to do so. DeJean, ¶ 1, 412 P.3d at 735. In that case, the court of appeals, after reviewing the declaration, held that the right to form the homeowners' association ran with the land and that the declaration put other homeowners on notice that a homeowners' association could be formed at any time. Id. at ¶ 30, 412 P.3d at 739. The court in DeJean thus did not create an implied homeowners' association based on the developer's intent—it simply recognized that a homeowner could form one. See id.

¶26 Indeed, DeJean highlights the deficiencies of the Two Rivers Estates' purported declaration. In DeJean, the declaration "state[d] that the condominium project is subject to [CCIOA]," and it "called for the existence of [an association] to be formed to manage the . . . common areas." Id. at ¶ 2, 412 P.3d at 735. The declaration specified that the association, Lake View Townhome Condominium Association, was a nonprofit

14

corporation organized under the laws of the State of Colorado. Id. at ¶ 32, 412 P.3d at 739. The declaration granted the homeowners' association "all of the powers necessary to govern, manage, maintain, repair, build, administer, and regulate the [c]ommon [i]nterest [c]ommunity, and to perform all duties required of it." Id. at ¶ 34, 412 P.3d at 739.

¶27 The declaration "further state[d] that membership in the [a]ssociation is automatic for . . . unit owners and belongs to the condominium unit, and that acceptance of any interest in either unit shall constitute appointment of the [a]ssociation to manage and control the owners' interests in the common areas." Id. at ¶ 3, 412 P.3d at 735. It also provided that "membership is appurtenant to the [units]," and that each unit owner "shall automatically be entitled to the benefits and subject to the burdens relating to the membership for that [unit]." Notably, the court of appeals in DeJean did not hold that these statements in the declaration actually established a homeowners' association; rather, it held only that a homeowner could create one. See id. at ¶ 1, 412 P.3d at 735. If the robust declaration in DeJean did not create a homeowners' association, then certainly the Two Rivers Estates' purported declaration does not.

¶28 Similarly, we disagree with the court of appeals' reliance on Hiwan Homeowners Association v. Knotts, 215 P.3d 1271 (Colo. App. 2009). Contrary to the court of appeals' suggestion, the Hiwan court did not "imply" the homeowners' association's authority to make assessments. See Hauer, ¶ 26. Rather, the covenants in that case "expressly imposed an obligation on each homeowner to pay mandatory assessments for maintenance or improvement." Hiwan, 215 P.3d at 1274. Indeed, in

15

_Hiwan_, "covenants specifically provided for a homeowners association," of which all homeowners in the subdivision were members. _Id._ at 1272. The covenants stated that "[t]here has been organized a non-profit corporation known as 'Hiwan Homeowners Association'" and that "[a]ssessments will be made by the Association and payment of the same shall be mandatory by the property owners within the subdivision and such assessments shall be considered a lien on the property to the extent not paid." _Id._ at 1274. Here, by contrast, homeowners in the Two Rivers Estates subdivision are not obligated to pay expenses associated with common property and the purported declaration did not expressly create a homeowners' association.

¶29 In short, we hold that the recorded plat, the deeds, and the subdivision agreement, taken together, do not amount to a declaration sufficient under CCIOA to establish a common-interest community. Collectively, these documents do not obligate homeowners to pay expenses related to commonly owned space, do not expressly create a homeowners' association, and lack too many statutorily prescribed components. Moreover, the primary concern animating our decision in _Evergreen Highlands_—i.e., saving a homeowners' association from the "untenable position of being obligated to maintain facilities and infrastructure without any viable economic means by which to do so"—is not present here.

### III. Conclusion

¶30 We conclude that the recorded instruments were insufficient under CCIOA to create a common-interest community by implication. Accordingly, we reverse and remand to the court of appeals for further proceedings consistent with this opinion.

16

**JUSTICE GABRIEL** does not participate.