HIWAN HOMEOWNERS ASSOCIATION,
a Colorado nonprofit corporation,
Petitioner–Appellee,

v.

Patrick KNOTTS, Rebecca Hicks, J.
Stephen Mercer, and Karla Mercer,
Respondents–Appellants.

No. 08CA1847.

Colorado Court of Appeals,
Div. VI.

July 9, 2009.

HindmanSanchez, P.C., William H. Short, Arvada, Colorado, for Petitioner–Appellee.

Robinson Waters & O'Dorisio, P.C., Anthony L. Leffert, Denver, Colorado, for Respondents–Appellants.

Opinion by Judge LOEB.

Respondents, Patrick Knotts, Rebecca Hicks, J. Stephen Mercer, and Karla Mercer (homeowners), appeal the district court's order in favor of the petitioner, Hiwan Homeowners Association, concluding that the Hiwan subdivision is a common interest community. We affirm.

## I. Background and Procedural History

This appeal arose out of a petition filed by the Association, pursuant to section 38–33.3–217(7), C.R.S.2008, of the Colorado Common Interest Ownership Act (the Act), to obtain court approval of proposed amendments and restatements of the restrictive covenants that govern the Hiwan residential subdivision.

The Hiwan subdivision, located near Evergreen, Colorado, was created when a limited partnership, C.G.K. Company, filed a subdivision plat in 1963 with the Jefferson County Clerk and Recorder. Two other subdivision plats were subsequently recorded by C.G.K. Also in 1963, C.G.K. recorded the Hiwan restrictive covenants. Although several lots were initially exempted from the covenants, by 1995, the owners of all such lots waived their exemptions and became subject to the covenants.

Paragraph 30 of the covenants specifically provided for a homeowners association. The Association was unincorporated until 1987. At that time, the Association incorporated and promulgated bylaws, which were most recently amended in 1993.

In addition, in 1971, Jefferson Land Associates and Evergreen, Inc., successors in interest to C.G.K., filed another subdivision plat. Each of the subdivision filings reserved fee ownership of the roads in the Hiwan subdivision to the developer filing the plat. However, fee title to the roads in the subdivision was conveyed to Jefferson County by warranty deeds recorded in 1974 and 1976.

In 1991, Hiwan Service Corporation, the successor of C.G.K., Jefferson Land, and Evergreen Inc., assigned all its rights under the covenants to the Association. By their terms, the covenants were set to expire in 2013, unless amended or extended. However, there was no express mechanism in the covenants for amending them. Rather, there was only a provision for releasing or terminating any or all of the covenants with approval of 75% of the homeowners, thus, according to the Association, implying approval by 100% of the homeowners is required to amend the covenants, unless the Act applied.

Accordingly, the association filed a petition seeking court approval of proposed amendments to the covenants pursuant to section 38–33.3–217(7) of the Act. The proposed amendments included a provision that would have allowed amendment of the Hiwan covenants with approval of 67% of the Hiwan homeowners, in accordance with section 38–33.3–217(7)(a)(I).

For subdivisions subject to the Act, section 38–33.3–217(7)(a)(III) allows an association to seek court approval of a proposed covenant amendment if unit owners holding more than 50% of the votes necessary to adopt the proposed amendment have voted in favor of the amendment. Further, section 38–33.3–217(7)(e) provides that a district court shall grant an association's petition after a hearing if all the preconditions of that section are fulfilled and no more than 33% of the unit owners file written objections to the proposed amendments prior to the hearing.

Here, homeowners objected to the Association's petition and the proposed amendments to the covenants. Specifically, homeowners claimed that the Act does not apply because the Hiwan subdivision is not a common interest community.

After briefing and a hearing on the Association's petition, the district court issued a written order. The order specified that the

Association had "not been able to obtain even a 67% approval of the proposed amendments," and that by the end of the hearing, "both sides agreed that even the minimum 50% approval required" by section 38–33.3–217(7)(a)(III) had not been obtained. Thus, the court denied the Association's petition on that basis. However, the district court also addressed the threshold and pivotal question whether the Act applied to Hiwan and, specifically, whether Hiwan is a common interest community. After a thorough analysis, the court concluded that Hiwan is a common interest community as defined in the Act. Specifically, the district court ruled: "By the common import of the words, a homeowner (owner of a 'unit') at Hiwan is obligated to pay for 'maintenance' of 'other real estate described in the Restrictive Covenants (the declaration).' "

Homeowners now appeal the district court's ruling that the Hiwan subdivision is a common interest community under the Act.

## II.  Standard of Review

Whether Hiwan is a common interest community under the Act is a question of statutory interpretation that we review de novo. *Giguere v. SJS Family Enterprises, Ltd.*, 155 P.3d 462, 467 (Colo.App.2006). We have a fundamental responsibility to interpret statutes to effect the General Assembly's intent. *Id.* On de novo review, we interpret a statute as a whole, giving the words in the statute their plain and ordinary meanings. *Platt v. Aspenwood Condo. Ass'n*, 214 P.3d 1060, 1063 (Colo.App.2009). In addition, we look at the context in which a statutory term appears, and the meaning of a word may be ascertained by reference to the meaning of words associated with it. *Id.*

■ Further, appellate courts may determine the meaning of undefined statutory words by referring to the dictionary. *People v. Thoro Prods. Co.*, 70 P.3d 1188, 1194 (Colo. 2003); *DISH Network Corp. v. Altomari*, —— P.3d ——, ——, 2009 WL 1798601 (Colo.App. No. 08CA1741, June 25, 2009).

■ In 1991, the General Assembly adopted the Act based on the Uniform Common Interest Ownership Act (1982) (Uniform

Act). *Platt*, 214 P.3d at 1064. "When, as here, a statute is patterned after a model code, we may draw on available persuasive authority in reaching our decision." *Id.* at 1063; *accord Giguere*, 155 P.3d at 467 ("We accept the intent of the drafters of a uniform act as the General Assembly's intent when it adopts that uniform act.").

## III.  The Act

Homeowners contend the district court erred by concluding that Hiwan falls under the Act's definition of a common interest community, and that therefore, the Act's provisions pertaining to amending or modifying the covenants are available to the Association. We disagree.

As relevant here, section 38–33.3–103(8), C.R.S.2008, defines a common interest community as follows: " 'Common interest community' means real estate described in a declaration with respect to which a person, by virtue of such person's ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a declaration."

We conclude that the district court properly determined that Hiwan is a common interest community, because an owner of a unit in Hiwan (a homeowner) is (1) obligated by a declaration (2) to pay for maintenance or improvement (3) of other real estate.

### A.  Declaration

■ First, we agree with the district court that the Act's reference to a "declaration" includes the plats and maps of the Hiwan subdivision and the covenants, all of which were properly recorded.

Under the Act, " 'Declaration' means any recorded instruments however denominated, that create a common interest community, including any amendments to those instruments and also including, but not limited to, plats and maps." § 38–33.3–103(13), C.R.S. 2008.

In *Evergreen Highlands Ass'n v. West*, 73 P.3d 1, 8 (Colo.2003), the supreme court considered whether a community fell within the definition of common interest community un-

der the Act even though the original covenants did not impose an obligation to pay for real estate taxes, insurance premiums, maintenance, or improvement. The court determined that the servitude or obligation to pay need not be expressed in a covenant or deed. *Id.* Specifically, the court concluded there was a declaration for purposes of the Act based on a plat filed conveying a park to the homeowners association, as well as a deed for the park and a statement in the articles of incorporation of the homeowners association stating the association's purposes were to " 'own, acquire, build, operate, and maintain' the common area and facilities, pay taxes on same," and to "determine annual membership or use fees." *Id.* at 9. Therefore, the court concluded the subdivision was a common interest community by implication. *Id.* at 7.

Here, as noted by the district court, paragraph 1 of the covenants specifically refers to "each and every lot shown on the Plat of Hiwan." Further, in contrast to *Evergreen*, the Hiwan covenants expressly imposed an obligation on each homeowner to pay mandatory assessments for maintenance or improvement. In that regard, paragraph 30 of the covenants provides:

> There has been organized a non-profit corporation known as "Hiwan Homeowners Association" which has as its function the maintenance of the subdivision. All purchasers of all lots shown on the Plat of Hiwan shall apply for membership and become members of the Association. Assessments will be made by the Association and payment of the same shall be mandatory by the property owners within the subdivision and such assessments shall be considered a lien on the property to the extent not paid.

This language demonstrates that the original covenants anticipated the formation of an association that would have certain responsibilities, including collecting mandatory assessments. Thus, if the documents in *Evergreen* were sufficient to establish a common interest community by implication, we conclude the plats and restrictive covenants here, filed and recorded at the same time the

subdivision was created, were sufficient to constitute a declaration under the Act.

## B. Maintenance and Improvement

■ Second, homeowners contend the obligation to pay assessments to the Association to fund enforcement of the covenants does not satisfy the Act's common interest community definition requiring payment for maintenance or improvement. In response, the Association contends that the mandatory assessments allow the Association to pay for several types of maintenance and improvement. We agree with the Association and conclude that the Association is responsible for both maintenance and improvement of the subdivision.

"Maintenance" and "improvement" are ordinary words of common usage that have unambiguous meanings. *Black's Law Dictionary* 973 (8th ed.2004) defines maintenance as "[t]he care and work put into property to keep it operating and productive; general repair and upkeep." Webster's Third New International Dictionary 1362 (2002) defines maintenance as "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency."

Black's Law Dictionary 773 defines an improvement as "[a] n addition to real property, whether permanent or not; [especially] one that increases its value or utility or that enhances its appearance." Webster's Third New International Dictionary 1138 defines improvement as "the act or process of improving: as ... the enhancement or augmentation of value or quality: an increasing of profitableness, excellence, or desirability."

As the Hiwan covenants provide, the maintenance and improvement done by the Association are paid for with monetary assessments, which, consistent with the definition of common interest community in the Act, are required to be paid by all Hiwan homeowners.

For example, the record shows that the Association hires the Colorado State Forest Service to conduct annual surveys to identify trees that should be removed. The recommendations from the surveys were sent to residents and included topics such as ways to

improve forest health and reduce the risk of wildfire. In addition, the Association pays for community-wide clean-ups. These are all maintenance expenditures, designed to keep up and enhance the appearance of the Hiwan community.

Further, the Association is also responsible for enforcing the covenants, which includes the ability to remove objectionable landscaping and secure a lien for payment of the removal. More generally, the Association can apply to a court for an injunction or any other proper relief for violation of the covenants by a homeowner. Without a budget, obtained from assessments, the Association would not be able to pursue such enforcement measures, which allow it to regulate the appearance of the Hiwan community.

Accordingly, we conclude Hiwan homeowners are obligated to pay for maintenance or improvement of the subdivision, and we next turn to the pivotal issue of whether such maintenance or improvement is of "other real estate," as that term is properly interpreted under the Act.

### C. Other Real Estate

■ Homeowners contend that Hiwan homeowners are not obligated to pay for maintenance of "other real estate" because there is no common property, such as a park or a swimming pool, in the Hiwan subdivision. We are not persuaded.

The district court defined the issue and concluded as follows:

The question then becomes whether a Hiwan homeowner is required to pay for "maintenance" of real estate described in the "declaration" *other than his own*. The answer is yes, even though the "other real estate" in the case of Hiwan is not "common property." Under section 30 of the Restrictive Covenants, there are mandatory assessments against property owners to be paid to the homeowners association "which has as its function the maintenance of the subdivision."

We agree with the district court's conclusion and analysis.

We first note that, although the roads in the Hiwan subdivision owned by the Associa-

tion's predecessors in interest may have been common property at one time, those roads were conveyed to Jefferson County prior to the incorporation of the Association. Accordingly, we agree that the roads were no longer common property when the Association petitioned the district court for relief in this case. Thus, we undertake our analysis, as did the district court, on the assumption that there is no "common property" in the Hiwan subdivision.

The statutory definition of a common interest community in section 38–33.3–103(8) refers to "other real estate," but nothing in that section requires the "other real estate" to be owned in common. Further, the Act itself defines "real estate" as follows:

"Real estate" means any leasehold or other estate or interest in, over, or under land, including structures, fixtures, and other improvements and interests that, by custom, usage, or law, pass with a conveyance of land though not described in the contract of sale or instrument of conveyance. "Real estate" includes parcels with or without horizontal boundaries and spaces that may be filled with air or water."

§ 38–33.3–103(25), C.R.S.2008. Again, nothing in the plain language of this definition requires, either expressly or implicitly, that the "other real estate" in section 38–33.3–103(8) must be common property.

■ Where the legislature could have restricted the application of a statute, but chose not to, we will not read additional restrictions into the statute. *See Springer v. City & County of Denver*, 13 P.3d 794, 804 (Colo.2000); *see also Mason v. People*, 932 P.2d 1377, 1380 (Colo.1997) (courts presume that if the General Assembly intended a statute to achieve a particular result, it would have employed terminology clearly expressing that intent). Here, the General Assembly could have drafted section 38–33.3–103(8) to define "common interest community" to require that the obligatory payments for maintenance and improvement be made for "common property" or "common elements" as defined in section 38–33.3–103(5), C.R.S. 2008. Because the General Assembly could have included this limitation in the statutory definition of "common interest community,"

but did not, we will not read such a requirement into section 38–33.3.103(8). *See Dubois v. Abrahamson,* 214 P.3d 586, 588 (Colo.App. 2009).

We also agree with the district court that this conclusion is supported by an analysis of the Uniform Act and by the Restatement (Third) of Property: Servitudes § 6.2 (2000).

Prior to 2008, the Uniform Act's definition of "common interest community" was virtually identical to section 38–33.3–103(8) of the Act. *See* Uniform Act § 1–103(7) (1994) ("'Common interest community' means real estate with respect to which a person, by virtue of his ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a declaration."). Indeed, the drafters of Restatement § 6.2 commented in the statutory notes that the Uniform Act's definition "includes communities with mandatory membership associations empowered to enforce the servitudes whether or not there is common property."

In 2008, the Uniform Act was revised to expressly clarify that a common interest community does not require the existence of common property. Thus, under the revised Uniform Act section 1–103(9), "'Common interest community' means real estate described in a declaration with respect to which a person, by virtue of the person's ownership of a unit, is obligated to pay for a share of real estate taxes, insurance premiums, maintenance, or improvement of, or services or other expenses related to, common elements, other units, *or* other real estate described in the declaration." (Emphasis added.)

The 2008 Uniform Act's use of the word "or" to set off "other real estate" is significant. The use of "or" indicates that payments for taxes, insurance, maintenance, or improvement may be related to common elements or, alternatively, "other real estate." Therefore, "other real estate" is distinct from common elements, and common elements are not encompassed by the phrase "other real estate." Accordingly, although under the Uniform Act the existence of common property may bring a community within the definition of a common interest community, we do not read the Uniform Act's definition to

require a subdivision to have common property in order to be a common interest community.

This conclusion is supported by comments to section 1–103(9) in the 2008 Uniform Act, which state that "the mutual obligations of unit owners—obligations which arise 'by virtue of' that ownership—to pay a share of the project's expenses may include a share of services provided to unit owners or other expenses provided either to the common elements or the units." *See* Uniform Act § 1–103 cmt. 8; *see also Platt,* 214 P.3d at 1064 (the Act was based on the Uniform Act).

We also find it instructive that the definition of "common interest community" in the Restatement does not require the existence of common property. The Restatement also uses the word "or" to distinguish common property from other ways in which a common interest community may arise:

> A "common-interest community" is a real-estate development or neighborhood in which individually owned lots or units are burdened by a servitude that imposes an obligation that cannot be avoided by nonuse or withdrawal
>
> (a) to pay for the use of, or contribute to the maintenance of, property held or enjoyed in common by the individual owners, *or*
>
> (b) to pay dues or assessments to an association that provides services or facilities to the common property *or* to the individually owned property, *or* that enforces other servitudes burdening the property in the development or neighborhood.

Restatement § 6.2(1) (emphasis added).

Although the Restatement's definition is worded differently from that in section 38–33.3–103(8) of the Act, the comments in the Restatement are instructive and guide our analysis here. *Evergreen,* 73 P.3d at 7 (applying § 6.2 of the Restatement to determine whether, under the Act, a common interest community existed by implication and could assess fees). *See, e.g.,* Restatement § 6.2 cmt. a ("Most common-interest communities have both commonly held property and mandatory membership associations, but the ex-

istence of either is sufficient to constitute the property bound by the servitude requiring payment to a common-interest community.").

Applying these principles here, we conclude the requirement in the covenants that homeowners in the Hiwan subdivision pay mandatory fees to the Association for maintenance and improvement of real estate throughout the subdivision is sufficient to bring Hiwan within the definition of a common interest community even though there is no common property in the subdivision.

Furthermore, our conclusion that the definition of a common interest community does not necessarily require the existence of common property is consistent with the purposes of the Act. *See* § 38–33.3–102(1)(a) & (d), C.R.S.2008 (the General Assembly declares that "it is in the best interests of the state and its citizens to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities" and "it is the policy of this state to promote effective and efficient property management through defined operational requirements that preserve flexibility for such homeowner associations"); *see also Evergreen,* 73 P.3d at 8.

The order is affirmed.

Judge FURMAN and Judge BOORAS concur.