Opinion by JUDGE TAUBMAN
¶ 1 Defendants, Crea J. and Martha E. McMullin (the McMullins), appeal the trial court's judgment quieting title to seventeen acres of Common Open Space (COS) in plaintiffs, John and Sena Hauer (the Hauers), individually and on behalf of the homeowners association of Two Rivers Estates (Two Rivers HOA). The McMullins and their attorney, David R. Medina, appeal the award of attorney fees against them in connection with two motions to compel. Because we agree with the trial court's conclusion that the recorded final plat, the deeds, and the subdivision agreement established an implied common interest community and an unincorporated homeowners association, we affirm on the principal issue raised in this appeal, as well as the trial court's attorney fee orders.
I. Background
¶ 2 In 1998, the McMullins purchased a thirty-acre tract of land overlooking the White River in Meeker, Colorado with the intention of developing a subdivision. In 2001, the Board of County Commissions of Rio Blanco County approved the McMullins' final plat, identifying the property as Two Rivers Estates and creating seven lots and seventeen acres of COS. Over the next eight years, the McMullins were unable to sell any of the property's seven lots.
¶ 3 In 2003, the McMullins mortgaged six of the seven lots to finance the construction of a family lodge on one of the lots. However, *1156 they did not mortgage or encumber the seventeen acres of COS.
¶ 4 In 2010, financial hardship forced the McMullins to sell all seven lots to three different owners. As a result, the Hauers own lots one and three; plaintiffs, Joseph and Kelly Conrado (the Conrados) own lot two; and plaintiff, Lincoln Trust FBO John Hauer (Lincoln Trust), owns lots four through seven, (collectively the lot owners).
¶ 5In 2011, the Hauers and Lincoln Trust filed a complaint individually and on behalf of the unincorporated Two Rivers HOA to quiet title to their respective lots. They also sought to quiet title to the COS in the Two Rivers HOA. With regard to the COS, the Hauers asserted that various recorded documents, including the final plat and the subdivision agreement, constituted declarations sufficient to create a common interest community by implication, and that the unincorporated Two Rivers HOA holds title to the COS. The McMullins counterclaimed, asserting that they hold title to the COS because a common interest community was never formally created and because they never conveyed the COS property.
¶ 6 Relying on Evergreen Highlands Ass'n v. West, 73 P.3d 1 (Colo.2003), the trial court found that a common interest community had been created by implication. In a detailed opinion, the court concluded that a membership in an unnamed homeowners association was appurtenant to each lot in the subdivision, and that the declarations placed ownership of the seventeen acres of COS in the unnamed association.
II. Common Interest Community Through Implication
¶ 7 The McMullins contend that the trial court erred when it quieted title to the COS in the unincorporated Two Rivers HOA. Specifically, they contend that the court erred when it concluded that recorded documents, including the final plat and subdivision agreement, constituted the declarations necessary to form a common interest community under the Colorado Common Interest Ownership Act (CCIOA). See § 38-33.3-103(8), C.R.S.2014. We disagree.
A. Standard of Review
¶ 8 Whether a common interest community exists under CCIOA is a question of statutory interpretation that we review de novo. Hiwan Homeowners Ass'n v. Knotts, 215 P.3d 1271, 1273 (Colo.App.2009). We interpret statutes to give effect to the General Assembly's intent, giving the words in the statute their plain and ordinary meanings. Platt v. Aspenwood Condo. Ass'n, 214 P.3d 1060, 1063 (Colo.App.2009). Further, we interpret statutes as a whole, giving effect to all of their parts. Wolf Creek Ski Corp. v. Bd. of Cnty. Comm'rs, 170 P.3d 821, 825 (Colo.App.2007).
B. Applicable Law
¶ 9 CCIOA establishes a "clear, comprehensive, and uniform framework for the creation and operation of common interest communities." § 38-33.3-102(1)(a), C.R.S.2014. It defines common interest communities as "real estate described in a declaration with respect to which a person, by virtue of such person's ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a declaration." § 38-33.3-103(8). This assessment obligation is a necessary attribute of a common interest community. See Restatement (Third) of Property: Servitudes § 6.2(1) (2000) (defining common interest communities as real estate developments in which individual lots are burdened by a servitude imposing an obligation to contribute to the maintenance of the common property).
¶ 10 A "declaration" for the purposes of CCIOA is "any recorded instruments, however denominated, that create a common interest community, including any amendments to those instruments and also including, but not limited to, plats and maps." § 38-33.3103(13); see Hiwan, 215 P.3d at 1273 ("[W]e agree with the district court that [CCIOA's] reference to a 'declaration' includes the plats and maps of the Hiwan subdivision and the covenants, all of which were properly recorded."); see also § 38-33.3-205(1), C.R.S.2014 (listing the required contents of a declaration, including identifying information and land use restrictions *1157 within the common interest community).
¶ 11 In Evergreen Highlands, the supreme court held that a common interest community's assessment obligation can be implied. 73 P.3d at 7. First, the court determined that Evergreen Highlands's declaration existed throughout several recorded documents. Id. at 9. Those documents included the planned community's covenants; a plat, which noted that a park area would be conveyed to the homeowners association; a deed whereby the developer of the community quitclaimed the community's park to the homeowners association; and the homeowners association's articles of association, which required it to "own, acquire, build, operate, and maintain" the common area and facilities, to pay taxes on them, and to "determine annual membership or use fees." Id.
¶ 12 Second, the Evergreen Highlands court relied on the Restatement of Property to conclude that a common interest community may be created by implication. Id. (citing Restatement (Third) of Property: Servitudes § 6.2 cmt. a ("An implied obligation may ... be found where the declaration expressly creates an association for the purpose of managing common property or enforcing use restrictions and design controls, but fails to include a mechanism for providing the funds necessary to carry out its functions.")). The Evergreen Highlands's declarations expressly established a homeowners association, conveyed to it the development's common property, charged it with maintaining the common property, and granted it authority to determine annual membership or use fees. Id . The court concluded that the declarations were sufficient to create a common interest community by implication. Id.
¶ 13 Similarly, in Hiwan, a division of this court held that declarations allowing a homeowners association to collect mandatory assessments for maintenance and improvements created a common interest community even though there was no common property in the subdivision. 215 P.3d at 1274-77. The division reasoned that Hiwan was a common interest community because an owner of a unit was obligated by the declarations to pay for maintenance and improvements of another's real estate. Id.
C. Analysis
¶ 14 The issue here is whether the recorded final plat, the deeds, and the subdivision agreement satisfy CCIOA's requirement that common interest communities be formed by an assessment obligation described in a declaration. We conclude that they do.
¶ 15 First, the recorded final plat for the Two Rivers Estates subdivision included a map outlining the seventeen acres of COS. The notes and notices on the final plat stipulated that the common property was to be maintained by an unnamed homeowners association. Plat Notice No. 1 stipulated that a "private access road" on the property was "the responsibility of the homeowners association." Plat Notice No. 2 stated that "domestic wells" on the property were "the responsibility of the homeowners association." Plat Notice No. 8 provided generally that "common ownership and maintenance [were] by the homeowners association." The final plat, in turn, is referenced in the deeds conveying lot one to the Hauers and lots four, five, six, and seven to Lincoln Trust.
¶ 16 Second, the subdivision agreement entered into by the McMullins and Rio Blanco County provided that "the developer [the McMullins] shall conform to all the conditions and commitments as proposed and approved on the preliminary plat and plan, and as approved on the final plat and in the final plan submittals."
¶ 17 Third, the land sale contract entered into by Lincoln Trust and the McMullins referenced an unnamed common interest community and imposed a deadline by which the seller must provide the buyer with the common interest community's documents.
¶ 18 Together, these documents created common property within the Two Rivers Estates subdivision and explicitly created a homeowners association charged with its maintenance. In accordance with the supreme court's decision in Evergreen Highlands, we conclude that the final recorded plat, the recorded subdivision agreement, the *1158 recorded deeds, and the land sale contract with Lincoln Trust constitute declarations sufficient to establish an implied assessment authority in a common interest community encompassing the seven lots and seventeen acres of COS in the Two Rivers Estates subdivision.
¶ 19 We further conclude that the declarations created an unincorporated homeowners association with the power to levy assessments against the property owners. The Restatement (Third) of Property: Servitudes, recognizes that, "[a]lthough rare, there are common-interest communities in which no association has been formally organized." § 6.2 cmt. c. The Restatement further notes that, where the creation of a homeowners association has not been expressly excluded, "failure to create an association is more likely the result of the developer's oversight or desire to save expenses than a choice to require either direct democracy or unanimous approval of the lot owners for decisions regarding management of the common property." Id. at § 6.3 cmt. a.
¶ 20 In such situations, "an association may be created ... by a court under certain circumstances." Id. at § 6.2 cmt. c; see also id. at § 6.3 cmt. a ("The judicial power to authorize creation of an association is that of a court of equity with its attendant flexibility and discretion to fashion remedies to correct mistakes and oversights and to protect the public interest."). Given the trial court's findings that the McMullins intended to create a homeowners association and charge it with maintaining the COS for the benefit of the property owners, we conclude that principles of equity support our conclusion that the declarations are sufficient to create an unincorporated homeowners association. See DeJean v. Grosz, 2015 COA 74, ¶ 30, 412 P.3d 733 (Where the declarations establish that the developer intended to create a homeowners association, a court may create an implied homeowners associations.).
¶ 21 The McMullins argue that their warranty deed establishes their ownership of the COS because neither the Hauers', nor the Conrados' warranty deeds, nor anything else in the record, conveyed the COS to either party. However, the trial court found that, even though each deed did not expressly reference an interest in the COS, the final plat provided that "common ownership and maintenance" of the subdivision property would extend to and be provided by the homeowners association. It inferred from this language in the final plat that the COS was part of the subdivision's common property and was appurtenant to each lot, and that with each conveyance of a lot, an appurtenant one-seventh common interest in the COS was conveyed as well. See Restatement (Third) of Property: Servitudes § 6.2 cmt. b ("To constitute a common-interest community, the common property must be appurtenant to individually owned property."); see also DeJean, ¶ 30.
¶ 22 The McMullins also argue that the final plat and subdivision agreement do not contain the required contents of a declaration. See § 38-33.3-205(1) (listing requirements of a declaration). We recognize that the declarations here are less complete than those in Evergreen Highlands and Hiwan . However, the declarations satisfied many of the statute's applicable requirements: they identified the common interest community as the "Two Rivers Estates," § 38-33.3-205(1)(a) ; they stated that the property is located in Rio Blanco County, id. at (1)(b); they contained a legal description of the property, id. at (1)(c); they described the boundaries of each unit and identified each with a lot number, id. at (1)(e); and they identified the "common elements," including the COS, id. at (1)(f).
¶ 23 Furthermore, several of section 38-33.3-205(1)'s requirements are inapplicable here because they apply only where the declarant or developer wishes to reserve rights in the property or restrict development. Such steps were not undertaken by the McMullins. See, e.g., id. at (1)(d) (requiring a "statement of the maximum number of units that the declarant reserves the right to create"); id. at (1)(g) (requiring a "description of any real estate ... that may be allocated subsequently as limited common elements"); id. at (1)(h) (requiring a "description of any development rights and other special declarant rights reserved by the declarant, together with a description sufficient *1159 to identify the real estate to which each of those rights applies and the time limit within which each of those rights must be exercised"); id. at (1)(i) (requiring statements recognizing any "development right" that "may be exercised with respect to different parcels of real estate at different times"); id. at (1)(j) (requiring a listing of any time limitations placed on land use restrictions); id. at (1)(l) (requiring a listing of "[a]ny restrictions on the use, occupancy, and alienation of the units and on the amount for which a unit may be sold or on the amount that may be received by a unit owner on sale, condemnation, or casualty loss to the unit or to the common interest community or on termination of the common interest community"); id. at (1)(m) (requiring references to the recording data for recorded easements and licenses appurtenant to, or included in the common interest community). In addition, two other statutory requirements apply only where the developer wishes to create a "large planned community" and thus do not apply here. Id. at (1)(p), (q).
¶ 24 Thus, it appears that only two applicable statutory requirements are not included in the Two Rivers Estates declarations. First, the declarations did not specifically allocate the fraction or percentage of common expenses for which each lot owner is responsible. See id. at (1)(k); § 38-33.3-207(1)(c), C.R.S.2014. However, as discussed above, the trial court found that each homeowner has a duty to contribute one-seventh of the common expenses to the homeowners association, and the McMullins do not argue that another allocation was required.
¶ 25 Second, the declarations did not include "[r]easonable provisions concerning the manner in which notice of matters affecting the common interest community may be given to unit owners by the association or other unit owners." See § 38-33.3-205(1)(o). However, the trial court recognized that its finding that a common interest community and a homeowners association exist does not by itself determine the structure and operation of either, including the manner in which unit owners are notified by the community and association. Furthermore, Two Rivers Estates contains only two families-the Hauers and the Conrados-which lessens the importance of this requirement. Regardless, the McMullins have not identified any items whose exclusion prevents the formation of a common interest community.
¶ 26 Finally, the underlying purpose of implying assessment authority in Evergreen Highlands and Hiwan is equally applicable here. Without implied assessment authority, the Two Rivers Estates common interest community would be "placed in the untenable position of being obligated to maintain" the private access road, the domestic wells, and other common property "without any viable economic means by which to do so." Evergreen Highlands, 73 P.3d at 4. Furthermore, given the McMullins' initial intention to establish a common interest community in the subdivision, we conclude that our holding comports with CCIOA's dictate that its provisions be supplemented with principles of law and equity.See § 38-33.3-108 ("The principles of law and equity ... supplement the provisions of this article.").
¶ 27 The McMullins rely on Abril Meadows Homeowner's Ass'n v. Castro, 211 P.3d 64, 66 (Colo.App.2009), to argue that only a signed declaration can create a common interest community under CCIOA. In Abril Meadows, a division of this court considered whether an unsigned but recorded declaration of covenants could be the basis for a collection action brought by a homeowners association against its members. Id. at 67-68. The division concluded that the unsigned declaration was invalid, and that a signature on a recorded plat filed simultaneously with the declaration was insufficient to satisfy the signature requirement. Id. However, the division did not address the issue presented in Evergreen Highlands, Hiwan, and here-whether several recorded documents can satisfy CCIOA's requirement that common interest communities be formed by an assessment obligation described in a declaration.
¶ 28 We also reject the McMullins' argument insofar as it relies on Sun Valley Land & Minerals, Inc. v. Hawkes, 138 Idaho 543, 66 P.3d 798 (2003). In Sun Valley, lot owners in a subdivision relied on the language of the community's Declaration of Covenants, Conditions and Restrictions, which conveyed *1160 common space to a homeowners association, to claim that the developers no longer retained a property interest in the common open space. Id. at 802-03. The Idaho Supreme Court concluded that because no homeowners association was formed, and no property rights were ever conveyed, the lot owners had no rights to the common open space. Id. at 801-02.
¶ 29 We recognize that here, as in Sun Valley, no formal homeowners association has been created. However, this case involves the application, not of contract or covenant law, but of CCIOA, which the Colorado Supreme Court has concluded permits the formation of common interest communities by implication. Furthermore, although Sun Valley is factually similar, the court there did not address whether an implied common interest community existed.
¶ 30 Finally, as the trial court here recognized, the conclusion that a common interest community and a homeowners association exist by implication does not by itself determine the structure and operation of the homeowners association. We reiterate the trial court's conclusion that courts do not have the power to create an agreement for the members of a homeowners association, or to create an association's operational infrastructure. We merely conclude that the trial court did not err when it found that the Two Rivers Estates' declarations established a common interest community and an unincorporated homeowners association under CCIOA. Each homeowner therefore has a duty to contribute one-seventh of the common expenses to the homeowners association for the maintenance of the common areas, including the COS. As the trial court noted, the parties now have the option of organizing a formal homeowners association, acting in unison, or dissolving the unincorporated association.
¶ 31 We therefore reject the McMullins' contention that no common interest community was created, and conclude that the trial court did not err when it found that a common interest community and an unincorporated homeowners association existed in the Two Rivers Estates subdivision.
III. Attorney Fees
¶ 32 Finally, the McMullins and Medina contend that the trial court abused its discretion when it awarded the Hauers their attorney fees incurred as a result of the McMullins' failure to disclose information relevant to the subdivision development, without making a finding of prejudice. We disagree.
A. Standard of Review
¶ 33 We review a trial court's decision to order sanctions under C.R.C.P. 37 for an abuse of discretion. Scott v. Matlack, Inc., 39 P.3d 1160, 1172 (Colo.2002).
B. Applicable Law
¶ 34 C.R.C.P. 26(a) requires parties to disclose certain discoverable information before trial, and C.R.C.P. 16.1(k)(1)(A) sets deadlines for these initial disclosures. When one party files a motion to compel discovery because of the other party's failure to comply with C.R.C.P. 26(a), the court may require the party whose conduct necessitated the motion to pay the moving party the reasonable expenses incurred in making the motion, including attorney fees. C.R.C.P. 37(a)(4)(A) ; People ex rel. Pub. Utils. Comm'n v. Entrup, 143 P.3d 1120, 1123 (Colo.App.2006).
C. Analysis
¶ 35 In July 2012, the Hauers filed their first motion to compel and for discovery sanctions, claiming that the McMullins had failed to serve their C.R.C.P. 26(a) initial disclosures in accordance with the deadlines in C.R.C.P. 16.1(k)(1)(A). The Hauers admit that the McMullins filed initial disclosures after they filed their first motion to compel; however, they argue that these disclosures were insufficient because they did not list any witnesses other than the McMullins, and C.R.C.P. 26 requires disclosures of all persons likely to have discoverable information.
¶ 36 Furthermore, the Hauers alleged that the McMullins failed to disclose documents and information mentioned in their motion for summary judgment, including: the identity of the realtor who listed the subdivision property; the identity of government planning *1161 and zoning officials with whom they worked during the subdivision process; surveying professionals whom they hired; loan application documents attesting to encumbrances on the property; correspondence with government officials made during the subdivision process; and various documents detailing the transfer of the property. The Hauers claimed that they made three requests for this information, yet the McMullins did not meet the deadline to provide it. In their motion, the Hauers requested reasonable attorney fees pursuant to C.R.C.P. 37(a)(4). In a minute order, dated September 20, 2012, the trial court granted that motion.
¶ 37 In October 2012, the Hauers filed a second motion to compel and for discovery sanctions pursuant to C.R.C.P. 37(a)(4), claiming that the McMullins' initial disclosures were insufficient and failed to include the information required by C.R.C.P. 26(a). The trial court granted the Hauers' second motion to compel and again awarded attorney fees.
¶ 38 On appeal, the McMullins assert that the trial court erred by granting the Hauers' motions for attorney fees pursuant to C.R.C.P. 37(a)(4) without making a specific finding of prejudice. However, while a trial court may not impose the sanction of evidence or witness preclusion under C.R.C.P. 37(c) where a party's late disclosure is harmless to the other party, Todd v. Bear Valley Vill. Apartments., 980 P.2d 973, 979 (Colo.1999), a sanction of attorney fees under C.R.C.P. 37(a)(4) requires no such finding.
¶ 39 Therefore, we reject the McMullins' contention and conclude that the trial court did not abuse its discretion when it awarded the Hauers their attorney fees incurred as a result of the McMullins' discovery violations.
IV. Conclusion
¶ 40 The judgment and attorney fee orders are affirmed.
JUDGE BOORAS concurs.
JUDGE GABRIEL concurs in part and dissents in part.