JUDGE GABRIEL concurring in part and dissenting in part.
¶ 41 I concur in the portion of the majority's opinion affirming the award of attorney fees to plaintiffs. The majority further concludes, however, that the recorded final plat, the deeds among the parties, and the subdivision agreement established an implied common interest community and an unincorporated homeowners' association. Because I do not believe that this conclusion is supported by either the applicable law or the evidence in this case, I respectfully dissent from that portion of the majority's opinion.
I. Discussion
¶ 42 Under the Colorado Common Interest Ownership Act (CCIOA), a common interest community is defined, in pertinent part, as "real estate described in a declaration with respect to which a person, by virtue of such person's ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a declaration." § 38-33.3-103(8), C.R.S. 2014. Such a community may be created "only by recording a declaration executed in the same manner as a deed." § 38-33.3-201(1), C.R.S.2014. Moreover, no such community is created until the plat or map for that community is recorded. Id.
¶ 43 A declaration is defined as "any recorded instruments however denominated, that create a common interest community, including any amendments to those instruments and also including, but not limited to, plats and maps." § 38-33.3-103(13). The plat is thus a part of the declaration. See § 38-33.3-103(22.5) ; Abril Meadows Homeowner's Ass'n v. Castro, 211 P.3d 64, 68 (Colo.App.2009).
¶ 44 In addition, section 38-33.3-205(1), C.R.S.2014, prescribes a lengthy list of items that the declaration must contain. Required components include information relating to the real property included in the common interest community; a description of any limited common elements; information regarding development rights reserved by the declarant; an allocation to each unit of the allocated interests; any restrictions on the *1162 use, occupancy, and alienation of the units; the recording data for recorded easements and licenses appurtenant to, or included in, the community; and reasonable provisions concerning the manner in which notice of matters affecting the community may be given to unit owners by the association or other unit owners. Id.
¶ 45 Lastly, section 38-33.3-301, C.R.S.2014, provides, "A unit owners' association shall be organized no later than the date the first unit in the common interest community is conveyed to a purchaser."
¶ 46 Here, the majority concludes that the plat, the subdivision agreement entered into between the Board of County Commissioners of Rio Blanco County and Crea J. and Martha E. McMullin, and the deeds to the individual lot owners, when read together, established a declaration sufficient to create a common interest community. I disagree.
¶ 47 The plat states, among other things, (1) "The private access road is the responsibility of the home owner's association"; (2) "Common ownership and maintenance are by the home owner's association"; and (3) "The covenants that accompany the subdivision are filed in the office of the Rio Blanco County Clerk and Recorder in Book Page " [sic]. Nothing in the plat or in any other document, however, created the required homeowners' association. Nor does the plat obligate anyone, by virtue of his or her ownership of a unit, to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a declaration. And no covenants were ever filed with the Rio Blanco County Clerk and Recorder.
¶ 48 Likewise, both the subdivision agreement and the individual lot owners' deeds are silent regarding any homeowners' association or assessments to be imposed on the lot owners. Moreover, notwithstanding the district court's finding to the contrary, I see nothing in any of the deeds that conveyed to the lot owners an undivided interest in the Common Open Space (COS) at issue. Specifically, although the deeds conveyed the specific lots described, "together with all and singular the hereditaments and appurtenances thereto," I see nothing in the record in this case that would allow me to conclude that the COS was either a hereditament or an appurtenance to the lot owners' property, and the majority cites no such evidence.
¶ 49 Finally, the plat, the subdivision agreement, and the deeds, even when read together, fail to include many of the provisions that section 38-33.3-205(1) prescribes for a valid declaration.
¶ 50 Accordingly, in my view, the plat, the subdivision agreement, and the deeds were insufficient to establish the declaration necessary to create a common interest community.
¶ 51 Notwithstanding the foregoing, the majority, relying on Evergreen Highlands Association v. West, 73 P.3d 1 (Colo.2003), and Hiwan Homeowners Association v. Knotts, 215 P.3d 1271 (Colo.App.2009), concludes that a common interest community was created by implication. I respectfully disagree with the majority's broad reading of those cases.
¶ 52 In Evergreen, 73 P.3d at 2, a subdivision and homeowners' association were created, and a plat and protective covenants were recorded. In addition, the homeowners' association was tasked with maintaining the common area and facilities, enforcing the covenants, paying taxes on the common area, and determining annual fees. Id. The covenants, however, did not require the lot owners to be members of or pay dues to the association, thus leaving the association with no mechanism for raising the funds necessary to carry out its delegated functions. See id.
¶ 53 On these facts, our supreme court adopted the approach taken by the Restatement (Third) of Property: Servitudes § 6.5 cmt. b (2000) (the Restatement), which provides that "the power to raise funds reasonably necessary to carry out the functions of a common-interest community will be implied if not expressly granted by the declaration or by statute." See Evergreen, 73 P.3d at 4. The court further quoted with approval section 6.2 comment a of the Restatement:
An implied obligation may ... be found where the declaration expressly creates an association for the purpose of managing common property or enforcing use restric tions and design controls, but fails to include a mechanism for providing the funds necessary to carry out its functions.
*1163 When such an implied obligation is established, the lots are a common-interest community within the meaning of [Chapter 6 of the Restatement].
Evergreen, 73 P.3d at 9 (emphasis added).
¶ 54 Here, unlike in Evergreen, we have no protective covenants and no homeowners' association that was created for the purpose of managing common property or enforcing use restrictions and design controls. Accordingly, we have no homeowners' association that was required to carry out functions on behalf of individual lot owners but that lacked a mechanism for raising the funds to do so. Thus, I perceive no basis for implying an obligation to levy assessments, which was what Evergreen concerned. Unlike the majority, I do not read that case so broadly as to allow us to imply the existence of a common interest community itself, notwithstanding the absence of a declaration and a homeowners' association tasked with acting on behalf of individual lot owners.
¶ 55 Similarly, in Hiwan, 215 P.3d at 1272, plats and restrictive covenants were filed, and the covenants specifically provided for a homeowners' association, which was duly created. In addition, the covenants expressly provided that the maintenance and improvement done by the association were to be paid for with monetary assessments that were required to be paid by the individual homeowners, although in this instance, there was no common property. Id. at 1274-75. On these facts, the division concluded:
[T]he requirement in the covenants that homeowners in the Hiwan subdivision pay mandatory fees to the Association for maintenance and improvement of real estate throughout the subdivision is sufficient to bring Hiwan within the definition of a common interest community even though there is no common property in the subdivision.
Id. at 1277.
¶ 56 In this case, unlike in Hiwan, there were no covenants, no homeowners' association or other entity obliged to act for the individual lot owners, and no documents requiring the lot owners to pay assessments to anyone for the maintenance and improvement of any property, common or otherwise, in the subdivision. Accordingly, all of the facts that allowed the division in Hiwan to conclude that a common interest community existed are absent here, and, thus, Hiwan does not support a conclusion that a common interest community was created by implication in this case.
¶ 57 In my view, Sun Valley Land & Minerals, Inc. v. Hawkes, 138 Idaho 543, 66 P.3d 798, 801-02 (2003), which the majority concludes is inapposite, is instructive. In Sun Valley, a group of lot owners argued that they had received vested property rights in a common area and roads appearing on a plat because their warranty deeds incorporated by reference the plat and covenants for a failed subdivision. Id. at 801. In support of this argument, the owners asserted that the covenants granted express easements to and across the open areas and that the plat created easements in common over the road and open areas depicted on the plat. Id. The Idaho Supreme Court rejected both of these assertions, however, because (1) the covenants, the plat, and the "over-all development scheme" manifested the developer's desire to convey to the lot owners certain property rights "through the control of a homeowners' association," but (2) no such association was ever formed and, thus, no property rights were ever conveyed to the lot owners. Id. at 801-02.
¶ 58 Here, as in Sun Valley, it may well be that the parties intended to convey certain rights in the COS to the lot owners through a homeowners' association. Because this never occurred, however, I do not believe that it is appropriate for us to create such property rights through the mechanism of an implied common interest community.
¶ 59 I am not persuaded otherwise by the district court's finding that the lot owners were members of an unincorporated association that purportedly satisfied the requirements of section 38-33.3-301. As noted above, section 38-33.3-301 requires the formation of a unit owners' association. That section also requires that the association be *1164 organized as a nonprofit, not-for-profit, or for-profit corporation or limited liability company, although the section further provides that the failure of the association to incorporate or organize as a limited liability company will not adversely affect the existence of the common interest community.Id. In my view, section 38-33.3-301 requires at least some intention of the owners to form an association for the purpose of carrying out the role of a unit owners' association. See also Black's Law Dictionary 148 (10th ed. 2009) (defining "association" as "[a] gathering of people for a common purpose; the persons so joined" and "[a]n unincorporated organization that is not a legal entity separate from the persons who compose it"). Here, however, I have seen no evidence to support the existence of an unincorporated association, particularly given that at least two of the lot owners, Joseph and Kelly Conrado, asserted that such an association was unnecessary.
¶ 60 Nor am I persuaded by the majority's reliance on DeJean v. Grosz, 2015 COA 74, 412 P.3d 733. In DeJean, a recorded declaration specifically called for the existence of a unit owners' association. Id. at ¶ 3, 412 P.3d at 735. In this case, in contrast, we have no formal declaration (indeed, as noted above, I do not believe that we have any declaration at all). Rather, we have a plat that makes two references to a nonexistent homeowners' association and deeds and a subdivision agreement that say nothing about any such association. Moreover, unlike in DeJean, I have seen no evidence indicating that all of the homeowners had consented, either expressly or implicitly, to being governed by a homeowners' association. Cf. id. at ¶¶ 31-36, 421 P.3d at 739-40. To the contrary, as noted above, at least two lot owners did not believe that an association was necessary.
¶ 61 And I am unpersuaded by the majority's reliance on equitable principles. Although I agree that section 38-33.3-108, C.R.S.2014, recognizes that principles of equity supplement the provisions of CCIOA, it is well established that equity follows the law and that when a legal right is clearly established, equitable principles should not be applied to circumscribe that right. See Am. Nat'l Bank of Denver v. Tina Marie Homes, Inc., 28 Colo.App. 477, 485, 476 P.2d 573, 577 (1970).
¶ 62 Here, the majority necessarily implies (1) the existence of the required homeowners' association or some other appropriate entity; (2) that title to the COS was transferred to this nonexistent association or entity; (3) that the lot owners agreed to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a sufficient "declaration"; and (4) that the implied but nonexistent association or entity had the power to levy assessments. For the reasons set forth above, I perceive no support in the law or the record to justify such a series of implications. Accordingly, I cannot agree that equity supports the majority's conclusion that a common interest community was created by implication here. See id.
II. Conclusion
¶ 63 For these reasons, I respectfully concur in part and dissent in part.